In re J.R. McCONNELL, Jr., the Bass Group, Ltd. MS, Ltd. LZ, Ltd. Growth United Properties, Inc. WF, Ltd., Debtors.

SPRING SERVICE TEXAS, INC., Plaintiff,

v.

J.R. McCONNELL, Individually, J.R. McConnell, Trustee, Peter Johnson, Trustee, the Bass Group, Ltd., the Bass Group, Inc. and any Other Owners or Claimants of any Interest in Certain Properties, Defendants.

Bankruptcy Nos. 86–10017–H3–11, 86–10020–H1–11, 86–10102–H1–11, 86–10021–H2–11, 86–10939–H1–11, 86–10019–H2–11 and 86–10017–H3–7.
Adv. No. 88–0479–H3.

United States Bankruptcy Court, S.D. Texas, Houston Division.

Dec. 21, 1989.

Lisa J. Mellencamp, Hutcheson & Grundy, Houston, Tex., for Spring Service Texas, Inc.

Mark Browning, Sheinfeld, Makey, & Kay, Austin, Tex., for defendants.

Daniel H. Johnson, Jr., Baker, Brown, Sharman & Parker, Houston, Tex., for trustee Johnson.

## MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

Came on for trial the complaint for declaratory judgment filed by plaintiff, Spring Service Texas, Inc. seeking a determination that its liens on a tract of land located in Galveston County, Texas are valid and enforceable. After considering the pleadings, evidence, memoranda and arguments of counsel, the court makes the following findings of fact and conclusions of law and enters a separate judgment in conjunction herewith. To the extent any findings of fact herein are construed to be conclusions of law, they are hereby adopted as such. To the extent any conclusions of law herein are construed to be findings of fact, they are hereby adopted as such.

J.R. McConnell ("McConnell") acquired certain real property located in Galveston County, Texas on May 29, 1984, by Deed of Exchange duly recorded on June 14, 1984 in the Official Public Records of Real Property of Galveston County, Texas. Thereafter, McConnell, individually and as trustee, conveyed the property to The Bass Group, Ltd. by Special Warranty Deed on January 30, 1985, which conveyance was also duly recorded in the property records

on February 1, 1985. On or about June 6, 1985, McConnell, individually, executed a promissory note in the principal amount of $800,000.00, as well as a Deed of Trust and Security Agreement to Barry L. Rascusin for the benefit of United Bank Sakowitz ("United Bank") encumbering the Galveston property. These instruments were also recorded in the public records on or about that same date. Although it was a matter of public record that McConnell no longer owned the property at the time he executed the promissory note and Deed of Trust for the benefit of United Bank, United Bank obtained a policy of title insurance issued by Ticor Title Insurance Company of California ("Ticor"), which policy guaranteed title in McConnell.

On October 31, 1986, involuntary Chapter 11 bankruptcy petitions were filed against McConnell and The Bass Group, Ltd. An order jointly administering these two cases, among others, was entered by the court on April 26, 1987. These cases were subsequently converted to a Chapter 7 liquidation proceeding on November 14, 1988 and January 4, 1989, respectively. Thereafter, United Bank made a claim against Ticor on the title insurance policy, which claim was subsequently settled and paid. Spring Service Texas, Inc. ("Spring Service"), the plaintiff, was then created by Ticor and as part of the settlement with United Bank the note and Deed of Trust were assigned to Spring Service on or about July 1, 1987 and thereafter duly recorded on July 2, 1987.

The parties to this action have entered into certain stipulations which were approved by the court. These stipulations provide that all testimony, evidence and exhibits offered and admitted at those certain hearings held on April 7, 1989 and April 10, 1989 on Spring Service's Motion to Remove the Trustee in Case No. 86–10017–H3–11 are admitted into evidence at the trial of this matter. The plaintiff seeks to have this court declare that the security interest granted by McConnell on the Galveston property is valid and enforceable notwithstanding the fact that this security interest was not granted by the record title owner, The Bass Group, Ltd. The basis for the relief requested is fourfold. Plaintiffs claim that McConnell perpetrated a fraud on them by misrepresenting the true state of record title; that The Bass Group, Ltd. is the alter ego of McConnell and intended through the conveyance from McConnell to cause plaintiff's predecessor-in-interest, United Bank, harm; that the conveyance from McConnell to The Bass Group, Ltd. should be voided as no consideration for same was paid; and that plaintiff is entitled to an equitable lien due to the Trustee's unjust enrichment.

With regard to the plaintiff's allegations concerning the fraud perpetrated by McConnell's misrepresentation as to title, alter ego, and the lack of consideration given for the conveyance, this court finds that plaintiff does not have the requisite standing to assert these causes of actions. These causes of action clearly and properly belong to the Trustee, as they are property of the respective bankruptcy estates. *In re MortgageAmerica Corporation*, 714 F.2d 1266 (5th Cir.1983); *In Matter of S.T. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987). (Court's Findings of Fact, Conclusions of Law, Transcript of hearing, April 3, 1989 on Motion for Leave to Continue Action and Motion for Order Granting Leave to Continue Suit, pages 32, 33, 37, and 49–50; Court's Findings of Fact and Conclusions of Law, Transcript of hearing, April 10, 1989 in Case No. 86–10017–H3–11 on Motion to Replace Trustee in The Bass Group, pages 5–8).

There is no express authority in the Bankruptcy Code allowing a creditors' committee or individual creditor to bring a suit which recovers or protects assets of the estate. However, an implied authority of standing in the old Bankruptcy Act has been held to exist through the current Code. *In re Monsour Medical Center*, 5 B.R. 715 (Bankr.W.D.Penn.1980). It has been held that creditors' committees have an implied qualified right to initiate, upon approval of the bankruptcy court, certain adversary proceedings when the trustee or debtor unjustifiably failed to bring suit or abused its discretion in not suing. *In re STN Enterprises*, 779 F.2d 901 (2nd Cir.

1985); *Louisiana World Exposition v. Federal Insurance Co.,* 858 F.2d 233 (5th Cir.1988); *In re Louisiana World Exposition, Inc.,* 832 F.2d 1391 (5th Cir.1987). The basis for allowing this implied qualified right to initiate suits, after obtaining court approval, is that the creditor's rights or interests would otherwise be impaired. See *Coral Petroleum v. Banque Paribas,* 797 F.2d 1351 (5th Cir.1986).

Although it is inferable that individual creditors can also act in lieu of the trustee or debtor-in-possession, extraordinary circumstances must be present before the court will allow them standing to bring these types of suits. The conditions necessary for the right to do so include the following: (1) that the claim must be colorable; (2) that the intervention must be brought on behalf of the estate; and (3) that the trustee or debtor-in-possession has unjustifiably refused to bring the suit or abused its discretion in not suing. *In re Louisiana World Exploration, Inc.,* 832 F.2d 1391; *In re V. Sajino Oil & Heating Co.,* 91 B.R. 655 (Bankr.E.D.N.Y.1988); *In re Feldhahn,* 92 B.R. 834 (Bankr.S.D.Iowa 1988).

Although this court finds the claims to be colorable, i.e., there is a possibility of success, the other conditions prerequisite to standing have not been met by the present plaintiff. The intervention was not brought on behalf of the interests of the estate as a whole, but instead, this court finds that the plaintiff, by attempting to assert the Trustee's causes of action, is concerned with improving its own status as a secured creditor, not with recovering assets for the benefit of all creditors. Further, the Trustee has not unjustifiably refused to bring the suit and has not abused his discretion in not suing. To the contrary, this court finds that the Trustee made a reasoned, well thought out, legal and business judgment in deciding whether to assert and pursue these particular causes of action.

In the event plaintiffs did have standing and prevailed on their assertions, the Galveston property would be an asset of the J.R. McConnell bankruptcy estate rather than The Bass Group, Ltd.'s estate. This would result in Spring Service's liens being valid, and with its obtaining a secured status rather than its present unsecured position. The Galveston property would then no longer be an asset of The Bass Group, Ltd., with the consequent result that the creditors in that case would be left with the prospect of recovering little or nothing on their claims.

■ Even in the event plaintiff had the standing to assert the alter ego and lack of consideration arguments, there was no evidence presented to the court by plaintiff on these issues that would have sustained plaintiff's burden of proof. Mr. Joseph Holzer, McConnell's attorney during the period of 1980 through 1986, and Ms. Rosa Maria Espinoza, secretary (from August 1983 through September 1986) to Marsha Peterson, who handled the banking and property transactions for J.R. McConnell, testified at the trial. Their testimony reveals that they had no real knowledge of whether The Bass Group, Ltd. failed to give consideration to McConnell at the time of the transfer of the Galveston property. Likewise, they were unable to state from their own knowledge or even speculate whether The Bass Group, Ltd. was in fact the alter ego of McConnell. Additionally, no evidence was presented as to the intent, legitimate or otherwise, McConnell may have had in transferring the Galveston property to The Bass Group, Ltd. Neither was there evidence of The Bass Group, Ltd.'s intent, which intent the plaintiff claims to have caused them harm. This lack of evidence results in a total failure of plaintiff to sustain its burden of proof in piercing the corporate veil of The Bass Group, Ltd.

■ It is ironic that Spring Service claims that a fraud was perpetrated upon its predecessor by McConnell's misrepresentations as to the true state of record title. Spring Service was on constructive notice of the fact that The Bass Group, Ltd. held record title, and easily could have confirmed the veracity of McConnell's alleged misrepresentation by examining the public records prior to loaning the sum of

$800,000.00. One is on constructive notice of the contents of a conveyance filed in the public records. Section 13.002 of the Texas Property Code sets forth the effect of a recorded instrument and states that "[a]n instrument that is properly recorded in the proper county is notice to all persons of the existence of the instrument." *Alkas v. United Savings Association of Texas, Inc.,* 672 S.W.2d 852 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.) Further, a party is charged with constructive notice of actual knowledge that could be acquired by examining the public records. *Veltmann v. Damon,* 696 S.W.2d 241 (Tex.App.—San Antonio 1985) aff'd in part, rev'd in part 701 S.W.2d 247 (Tex.1983); *First Savings and Loan Association of El Paso v. Avila,* 538 S.W.2d 846 (Tex.Civ.App.—El Paso 1976, writ ref'd n.r.e.); *Farmers' Mut. Royalty Syndicate v. Isaacks,* 138 S.W.2d 228 (Tex.Civ.App.—Amarillo 1940, no writ).

The conveyance between McConnell and The Bass Group, Ltd. was properly recorded some four months prior to the execution of the Deed of Trust by McConnell in favor of United Bank. As such, United Bank was put on notice from the date of recordation of the conveyance into The Bass Group, Ltd., February 1, 1985, that The Bass Group, Ltd. was record title owner. United Bank as a matter of law is presumed to have known this information when it loaned the $800,000.00 to McConnell. Thus, United Bank never obtained any type of security interest in the Galveston property since its claimed interest was purported to have been granted by one who no longer held record title.

A simple examination of the public records by United Bank and Ticor, the title insurance company, could have prevented this unfortunate occurrence. A prudent lender would no doubt make certain that the party claiming record title actually held same prior to approving a loan and disbursing large amounts of money. Any damages which might have been suffered by Ticor and Spring Service with its predecessor-in-interest, United Bank, are a direct result of the gross negligence of United Bank and Ticor in failing to have made

such an elementary inquiry. The legal presumption that constructive notice is actual knowledge and the failure of United Bank, Ticor and thus, Spring Service to have confirmed the record title holder resulted in their not having a properly perfected security interest. Responsibility for this lack of action rests squarely with the plaintiff and its predecessor-in-interest and consequently, they must bear the loss attributable to it.

Finally, plaintiff claims that it is entitled to an equitable lien in order to prevent an unjust result. An equitable lien arises either from a written contract which shows an intention to charge some particular property with a debt or obligation, *Citizens' Co-op Gin v. United States,* 427 F.2d 692 (5th Cir.1970); *Bray v. Curtis,* 544 S.W.2d 816 (Tex.Civ.App.—Corpus Christi 1976, writ, ref'd n.r.e.), or is implied and declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and circumstances of their dealings. Black's Law Dictionary; *Barfield v. Henderson,* 471 S.W.2d 633 (Tex.Civ.App.—Corpus Christi 1972, ref'd n.r.e.); *Matter of Daves,* 770 F.2d 1363 (5th Cir.1985). This type of lien is based upon an agreement indicating an intention that some specific property is to be held, given, or transferred as security. *In re Jones,* 37 B.R. 969 (Bankr.N.D. Tex.1984). It is a right by which a creditor is entitled to obtain satisfaction of his debt by resort to specified property belonging to debtor. *In re Jones,* 37 B.R. 969; *Matter of Daves,* 770 F.2d 1363. However, an equitable lien will not be implied where there is an adequate remedy at law, and where the condition is attributable to want of due diligence. *Barfield,* 471 S.W.2d 633; *Anderson Bros. Corp. v. O'Meara,* 306 F.2d 672 (5th Cir.1962).

This court finds that the plaintiff can not avail itself of equitable principles in the present situation. The contract or agreement through which an equitable lien could arise in this case is the Deed of Trust granted by McConnell to United Bank. McConnell did not hold record title at the time he purportedly conveyed the

**46**

security interest. Thus, there existed no lien or interest by United Bank in the Galveston property at any time due to the fact that the record title owner, The Bass Group, Ltd., was not a party to the agreement and did not grant the Deed of Trust. One can not have a lien or security interest in property, legal or equitable, when that interest is granted by one who no longer has an interest in the property, i.e., McConnell could not convey what he did not have. An interest in the property, of whatever nature, was no longer McConnell's to give. Plaintiff is not claiming an equitable lien arising from a deed of trust granted by The Bass Group, Ltd., which was defective in some manner but intended by the parties to have been a viable security interest. It claims to be entitled to an equitable lien on property of a third party, the Bass Group, Ltd., which never intended to and never did execute or grant a security interest to United Bank in the Galveston property.

Even in the event that plaintiff could avail itself of an equitable remedy, an equitable lien will not be implied where there is an adequate remedy at law. *Barfield,* 471 S.W.2d 633; *Anderson Bros. Corp. v. O'Meara,* 306 F.2d 672 (5th Cir.1962). In the present case, plaintiff had an adequate remedy at law as it could have obtained the Deed of Trust from the record title owner. This it failed to do. This court finds that, under the facts and circumstances of the present case, it would be highly inappropriate to recognize and establish that Spring Service and/or its predecessor-in-interest, United Bank, has an equitable lien on the Galveston property.

Based upon the foregoing findings of fact and conclusions of law, the court grants judgment for defendants denying plaintiff the requested relief of recognizing its security interest in the Galveston property and enters a separate judgment in connection herewith.