**In re TEXAS STATE OPTICAL, INC., Debtor.**

**Bankruptcy No. 94–10795.**

United States Bankruptcy Court, E.D. Texas, Beaumont Division.

Sept. 13, 1995.

Ed Ripley, Sheinfeld, Maley & Kay, Houston, TX, for Debtor.

Josiah Daniel, Dallas, TX, for Stephens Diversified Leasing.

### OPINION

DONALD R. SHARP, Bankruptcy Judge.

COMES NOW before the Court for consideration the Motion for Relief from Automatic Stay of 11 U.S.C. § 362 With Respect to Fred Funk Promissory Notes (the "Stay Motion") filed by Stephens Diversified Leasing, Inc. ("SDL"). This opinion constitutes the Court's findings of fact and conclusions of law to the extent required by Fed.R.Bankr. Proc. 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 17, 1992, SDL and TSO entered into the Franchisee Financing Agreement pursuant to which SDL agreed to provide a source of direct financing for franchisees of TSO (the "Franchisees") to enable the Franchisees to purchase a TSO store along with equipment, fixtures and inventory for use in connection with the operation of the Store ("Store").

The Franchisee Financing Agreement provides that upon default by any Franchisee on its obligations to SDL, TSO has certain recourse obligations to SDL which can be satisfied, among other ways, by TSO taking over the operation of the Store of the delinquent Franchisee and assuming all obligations of the Franchisee to SDL.

Among the Franchisees financed by SDL under the Franchisee Financing Agreement were (a) Benny Askins, Inc. ("Askins") who

operated the store located in Fort Worth, Texas at Hulen Mall ("Hulen Store") and (b) Terry Schitoskey ("Schitoskey") who operated the Store located in Midland, Texas ("Midland Store").

The indebtedness of Askins and Schitoskey to SDL was evidenced by promissory notes and secured by perfected security interests in all presently owned and after-acquired equipment, inventory and fixtures located at the respective Store together with all accounts and general intangibles and all products and proceeds relating to such collateral (collectively, the "Collateral").

Prior to the Petition Date, the Franchisees of the Hulen Store and the Midland Store were not able to perform their respective obligations to SDL and, as a consequence, TSO took possession of such Stores and assumed the indebtedness and obligations of such Franchisees to SDL. The assumption by TSO of such indebtedness and obligations is evidenced by (a) that certain Promissory Note dated June 1, 1994 executed by TSO and payable to the order of SDL in the original stated principal amount of $165,-396.55 with respect to the Hulen Store ("Hulen Note") and (b) that certain Promissory Note dated July 17, 1994 executed by TSO and payable to the order of SDL in the original stated principal amount of $75,040.06 with respect to the Midland Store ("Midland Note").

The assumed indebtedness evidenced by the Hulen Note and the Midland Note is secured by continuing and perfected security interests in the Collateral evidenced by security agreements and financing statements (collectively, "Collateral Documents") between TSO, as debtor, and SDL, as secured party, relating to the Midland Store and the Hulen Store. The Collateral Documents continue the perfected security interests in the Collateral previously granted to SDL by Askins and Schitoskey, respectively.

Subsequent to the execution of the Hulen Note and the Midland Note, TSO found a new Franchisee, Fred Funk, a former TSO employee who took over the operation of the Hulen Store and the Midland Store. The transfer of the Collateral to Funk was specifically made subject to SDL's security interest in the Collateral. On or about September 7, 1995, Mr. Funk executed two (2) promissory notes (the "Funk Notes") payable to TSO.

On September 30, 1994, TSO filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code. TSO continues to operate its property and manage its business as a debtor in possession.

On March 24, 1995, SDL filed the Motion for Relief from Automatic Stay of 11 U.S.C. § 362 or, Alternatively, for Adequate Protection with Respect to Hulen Store and Midland Store (the "First Motion"). Pursuant to the First Motion, SDL requested that the Court enter an order modifying the automatic stay of 11 U.S.C. § 362 to permit SDL to take all actions necessary under state law to enforce its security interest in the Collateral located at the Hulen Store and Midland Store. As set forth in the First Motion, SDL's security interest in the Collateral had its inception with the original Franchisees of the Hulen Store and the Midland Store and continues in the Collateral despite its transfer by TSO to Mr. Funk.

On or about April 7, 1995, TSO filed its response to the First Motion. On May 2, 1995, this Court entered an Agreed Order between TSO and SDL regarding the First Motion. Pursuant to the Agreed Order, SDL was granted relief from the automatic stay to exercise all of its rights and remedies with respect to Funk and the Collateral located at the Hulen Store and the Midland Store.

Since the entry of the Agreed Order, SDL has been in negotiations with Funk in an effort to reach a consensual resolution regarding Funk's use of the Collateral. Funk has refused to execute new promissory notes in favor of SDL to replace the notes originally executed by the original Franchisees and now evidenced by the Hulen Note and Midland Note.

As a consequence of the foregoing, SDL filed the present Stay Motion. The present Stay Motion seeks a modification of the stay in favor of SDL and entry of an order directing TSO to endorse and turnover the Funk

Notes to SDL. TSO objects to this modification.

## DISCUSSION

### I. Lack of Equity

■ SDL asserts that the stay should be modified pursuant to § 362(d)(2). That section provides that the stay may be modified with respect to a stay of an act against property if (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2).

The evidence clearly establishes that TSO has no equity in the Funk Notes. The Funk Notes are in the exact same amount as the Hulen Note and the Midland Note. Furthermore, Keith Allbright, Vice President of TSO testified that TSO made no additional investment in the Hulen or Midland Stores.

TSO has failed to establish that the Funk Notes are necessary to an effective reorganization. The debtor shoulders the burden of proof on the issue of "necessary to an effective reorganization." 11 U.S.C. § 362(g)(2).

■ However, this does not necessarily mean that SDL is entitled to a modification of the automatic stay. SDL must establish that it has a right to the Funk Notes.

The security agreements with TSO provided SDL with a security interest in all equipment, inventory, fixtures and other goods located at the Hulen and Midland Stores and all general intangibles of any and every kind whatsoever related thereto, all whether now owned or hereafter acquired by the Debtor, and all replacements, substitutions and proceeds of all the foregoing.

TSO subsequently sold the Hulen and Midland Stores to Funk along with all equipment, inventory, and fixtures subject to SDL's security interest in exchange for the Funk Notes.

SDL asserts that the Funk Notes constitute proceeds from the sale of the equipment, inventory, and fixtures and are, thus, subject to SDL's security interest. "Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Tex.Bus. & Comm. Code § 9.306(a) (West 1991). Clearly the Funk Notes constitute proceeds from the sale of the collateral.

■ However, SDL failed to perfect its security interest in the Funk Notes. The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected ten days after receipt of the proceeds by the debtor unless the security interest in the proceeds is perfected before the expiration of the ten day period. Tex.Bus. & Comm.Code § 9.306(c)(3) (West 1991). A security interest in money or instruments can be perfected only by the secured party's taking possession. Tex.Bus. & Comm.Code § 9.304(a) (West 1991).

SDL needed to take possession of the Funk Notes within 10 days after the sale of the Hulen and Midland Stores in order to perfect its security interest. It failed to do so.

■ SDL asserts that although it failed to perfect its security interest in the Funk Notes, it is entitled to an equitable lien on the notes. Under well established jurisprudence in our Circuit, an equitable lien arises either (a) from a written contract which shows an intention to charge some particular property with a debt or obligation or (b) is implied and declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings. *In re McConnell,* 122 B.R. 41, 45 (Bankr.S.D.Tex. 1989).

■ An equitable lien is based upon circumstances or an agreement indicating an intention that some specific property is to be held, given or transferred as security. *In re Daves,* 770 F.2d 1363, 1365 (5th Cir.1985); *In re McConnell,* 122 B.R. at 45; *In re Jones,* 37 B.R. 969 (Bankr.N.D.Tex.1984). However, courts have specifically held that an equitable lien is appropriate only where "the intention to create such a charge clearly appears from the language and the attendant circumstances. Strict proof of such intention is required." *Cherno Dutch American Mercantile Corp.,* 353 F.2d 147 (2d Cir.1965).

■ The Court does not believe that the circumstances of this case require the imposition of an equitable lien. There has been no evidence of any wrongful behavior by TSO. SDL has a perfected security interest in all equipment, inventory and fixtures at the Hulen and Midland Stores. SDL has been granted a modification of the stay to pursue their rights against these assets. Further, SDL holds a promissory note from TSO for the full amount of the debt on the Hulen and Midland Stores. The Court sees no circumstances requiring the imposition of an equitable lien on the Funk Notes.

■ Simply put, the common sense analysis is that SDL has received exactly what they bargained for. They have a valid lien on the Stores in question and have a promissory note from TSO. The fact that TSO has taken advantage of the bankruptcy laws and thus obstructed a barrier to SDL's ready collection of their debt does not change that basic legal premise. To allow SDL to now acquire the Fred Funk notes would allow them to enhance their position by acquiring a direct personal right against Fred Funk. An equitable lien is only to be used to avoid an injustice to the party claiming it. In this case, the equitable lien is unnecessary since SDL still has its security interest in the Stores and still has its original promissory note from TSO. They are not entitled to more than that.

## II. *Cause*

■ SDL further asserts that the automatic stay should be modified and TSO should be directed to deliver the Funk Notes to SDL for cause. 11 U.S.C. § 362(d)(1) provides for the modification of the automatic stay for cause. "Cause" as used in § 362(d)(1) has no clear and limited definition and, therefore, is determined on a case by case basis. *In re MacDonald*, 755 F.2d 715, 717 (9th Cir.1986). "Cause" is an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations. *In re Sentry Park, Ltd.*, 87 B.R. 427, 430 (Bankr.W.D.Tex.1988).

■ SDL asserts that the Funk Notes are subject to a constructive trust in SDL's favor, therefore, establishing cause to modify the automatic stay. Constructive trust is an equitable device imposed by law because the person holding title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property. *In re Monnig's Dept. Stores*, 929 F.2d 197, 201 (5th Cir.1991). The elements of constructive trust under Texas law are (a) breach of fiduciary or confidential relationship or, in the alternative, actual fraud; (b) unjust enrichment of the wrongdoer; and (c) tracing of the property to an identifiable res. *In re Southmark Corporation*, 49 F.3d 1111, 1118 (5th Cir.1995). The Fifth Circuit has stated "to justify imposing a constructive trust on property, fraud—either actual or constructive—must be present." *Id.*

The Court does not believe the facts of this case warrant the imposition of a constructive trust. There has been no evidence of any wrongful behavior by TSO. Upon the default of Askins and Schitoskey, TSO assumed operation of the Hulen and Midland Stores as was its right under the Franchisee Financing Agreement. TSO later sold the Stores to a new Franchisee, Funk. This transaction was also proper. The failure of TSO to assign the Funk Notes to SDL was not the result of any wrongful intent and did not constitute a breach of any fiduciary duty.

Moreover, the Court does not believe that TSO is unjustly enriched by the Funk Notes. SDL has a perfected security interest in all the equipment, inventory and fixtures in the Hulen and Midland Stores. SDL has obtained a stay modification to allow it to pursue its rights against the equipment, inventory and fixtures. SDL also holds a promissory note from TSO in the full amount of the debt for the Hulen and Midland Stores. The Court fails to see how SDL is prejudiced. Consequently, the Court finds no unjust enrichment.

In conclusion, the Court does not believe that the facts of this case warrant the imposition of an equitable lien or a constructive trust. Consequently, there is no cause for the modification of the automatic stay. It is therefore

ORDERED that the Motion for Relief from the Automatic Stay is hereby DENIED.