**In re ASHFORD HOTELS, LTD.**
**a/k/a AH Ltd., Debtor.**

**Bankruptcy No. 97–B–48573 JHG.**

United States Bankruptcy Court,
S.D. New York.

Nov. 9, 1998.

## DECISION ON TRUSTEE'S MOTION TO APPROVE (1) A FUNDING AGREEMENT AND (2) RETENTION OF BROWN & WOOD AS SPECIAL COUNSEL

JEFFRY H. GALLET, Bankruptcy Judge.

Roy Babbitt, the Chapter 7 Trustee (the "Trustee") of Ashford Hotels (the "Debtor"), moves for an order pursuant to § 364 of the United States Bankruptcy Code (the "Code") to approve a funding agreement (the "Funding Agreement") with Allied Irish Bank ("AIB"), a creditor.[1] The Funding Agreement requires the Trustee to hire Brown & Wood, AIB's attorneys, to defend the Debtor in actions pending in New York State and London, England, for which AIB would pay Brown & Wood's legal fees. Jay Higgins ("Higgins") and Charles Tyree ("Tyree"), creditors of the Debtor and adverse parties in various cases, and the United States Trustee (the "UST") object.

For the reasons set forth below, I approve the Funding Agreement and do not reach the issue of Brown & Wood's retention as Special Counsel to the Trustee.

## BACKGROUND

### A. Case History

This case involves failed real estate ventures and bitter litigation on both sides of the Atlantic Ocean.[2] There are numerous charges and countercharges of illegal, or, at least, immoral activities. It is impossible for me to judge what is true and who is right on the record before me. In any event, it is not necessary for me to do so to decide this motion. Those issues will be resolved by another court, on another day.

The Debtor was formed on April 20, 1988.[3] That same year, the Debtor and its principal,

Warshaw, Burstein, Cohen, Schlessinger & Kuh, L.L.P. by Edgar H. Booth, New York City, for the Chapter 7 trustee.

Jones, Day, Reavis & Pogue by Lawrence P. Gottesman, New York City, for Jay Higgins & Charles Tyree.

Brown & Wood, L.L.P. by Roger J. Hawke, New York City, Applicant for Special Counsel to the trustee.

Office of the United States Trustee by Goodwin Benjamin, New York City.

1. The court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. § 157(b)(2)(A).

2. Higgins and Tyree note in their objection that "[i]n light of the extreme complexity and more than ten year duration of the frauds, only a portion of the enterprise and some of the thirty related litigations which have arisen are described here." Higgins & Tyree Objection, at 6 n. 1.

3. Higgins and Tyree allege that the Debtor "took over, assumed, or held itself out as the successor to the business of, among others, two preexisting companies known as Ashford Castle, Inc. and Dromoland Castle, Inc."

William Dowling ("Dowling"), participated in a hotel development project in England known as "Nuneham Park." AIB loaned £6 million for the project to Nuneham Park Ltd. ("NPL"), of which the Debtor guaranteed £3 million.

The Debtor, Higgins, Tyree, and Emblem B.V. ("Emblem"), NPL's shareholders, are the parties to a January 1989 agreement (the "Shareholder's Agreement"). Seven months later, they entered into a second contract (the "Restructing Agreement"). Under the Restructuring Agreement, the Debtor and Dowling were removed from Nuneham Park's management and sold their interests to Higgins, Tyree and Emblem. The Restructuring Agreement provided that the Debtor and Dowling were to be indemnified by Higgins, Tyree and Emblem. Higgins and Tyree now claim that the indemnity agreement was fraudulently obtained.[4] The validity of the Restructuring Agreement's indemnification clause is the subject of an action for recission, brought by Higgins and Tyree against the Debtor, in Supreme Court, New York County (the "New York Action").

The Nuneham Park project was never completed and NPL defaulted on its loan to AIB. In July 1992, AIB sued the Debtor in England under its guarantee. England's High Court of Justice ultimately granted a default judgment in favor of AIB for £3.6 million. That judgment remains unsatisfied.

In November 1992, England's High Court of Justice appointed Mark Stephen Gill as Receiver (the "Receiver") "of the Debtor's right of indemnification." The Receiver commenced an action in London (the "London Action"), on behalf of the Debtor, against Higgins, Tyree and Emblem "upon the Debtor's right to be indemnified."

AIB and Dowling are also defendants in an action pending in the United States District Court for the Eastern District of New York (the "Eastern District Action"). In the Eastern District Action, the plaintiffs, which include Higgins, assert charges of common law fraud, aiding and abetting fraud, breach of fiduciary duty, and breach of contract.[5] Brown & Wood represents AIB in that action.[6]

In 1997, Higgins and Tyree filed a Note of Issue in the New York Action. The trial was to start in early 1998. Claiming that it lacked the necessary funds to defend the New York Action, the Debtor filed a voluntary petition for relief under chapter 7 of the Code on December 29, 1997.

The Trustee asserts that AIB:

> is interested in having the Debtor defend the New York Action to a successful conclusion so as to determine the validity and enforceability of the Debtor's right to be indemnified for its liability for [AIB's judgment], thereby enabling the Receiver to recover under the indemnity in the London Action and to pay the amount recovered to [AIB] in satisfaction of [AIB's judgment].

Accordingly, the Trustee and AIB have entered into the Funding Agreement for which they now seek approval.

### B. The Funding Agreement

The terms of the Funding Agreement between the Trustee and AIB are as follows. AIB is to pay the Trustee $25,000 (the "Payment"). The Payment is designated to pay the estate's administrative expenses. The estate is otherwise administratively insolvent.[7] In return, AIB receives a claim against the estate for reimbursement of expenses incurred and funds advanced in connection with Brown & Wood's litigation of the New York Action. That claim would be subordinated only to payment of the Trustee's fees and expenses, including payment to the Trustee's professionals.

---

4. Higgins and Tyree's allegations of wrongdoing are their own legal conclusions. Those issues are not before me.

5. Counts one, two, and three of plaintiffs' complaint in the Eastern District Action alleging RICO violations were dismissed. See Burke v. Dowling, 944 F.Supp. 1036 (E.D.N.Y.1995).

6. There are apparently other actions pending in other jurisdictions by or against the parties in interest here but they do not appear to directly affect the questions before me.

7. Such fees and expenses include the Trustee's regular legal counsel, but excludes the fees and expenses of Brown & Wood.

In the event that the Trustee prevails in the New York Action, or the Receiver obtains and enforces a judgment in, or settles, the London Action, and remits to AIB the "net" proceeds recovered in the London Action (the "Recovery Amount"), AIB will reimburse itself for all expenses and will remit to the Trustee the lesser of (a) $500,000, or (b) five percent of the balance of the Recovery Amount net of such reimbursement. The proceeds of the Recovery Amount will go to pay creditors and remaining administrative expenses, if any. AIB's claim against the debtor will be subordinated to those of the unsecured creditors.[8]

As a condition to AIB's offer, the Debtor must retain Brown & Wood as attorneys in the New York Action. AIB, under its offer, will pay Brown & Wood's fees and expenses.

## C. Higgins and Tyree "Counteroffer"

Higgins and Tyree assert that they too made an "offer" to the Trustee. That "offer" included the following: (1) a settlement of the New York State Action on stipulated facts proposed by them and entry of a judgment against the Debtor; (2) $50,000 for the purchase of estate assets including claims against current and former officers and directors of the Debtor;[9] and (3) subordination of Higgins' and Tyree's rights of recovery from the New York State Action to the rights of other creditors of the estate.

**8.** The Funding Agreement provides that
if all allowed claims against the Debtor's estate (other than [AIB's] claim in respect of [AIB's] judgment) are paid in full pursuant to Section 726(a)(1) of the Bankruptcy Code, the Trustee will apply any balance of the money received pursuant to sections 2 and 4 [thereof] to satisfy the remaining unpaid portion of the [AIB's] claim in respect of [AIB's Judgment] before any distribution is made pursuant to subsections (2), (3), (4), (5), or (6) of Section 726(a) of the Bankruptcy Code.
*Funding Agreement*, at ¶ 16. The Debtor lists AIB's claim at $226,589 in the schedules annexed to its petition.

**9.** Higgins and Tyree assert that causes of action for conversion of funds, misuse of corporate assets and knowing failure to pursue claims for misconduct exist against the Debtor's current and former officers and directors.

## LAW

The Trustee is presented with three ways to proceed with this administratively insolvent Debtor. These options, none of which is appetizing, are: (1) accept AIB's offer of $25,000 and permit Brown & Wood, AIB's long time lawyers, to defend the estate in the New York and London Actions, with the hope of a future recovery for the estate; or (2) accept Higgins and Tyree's offer of $50,000, distribute it and settle the New York Action, with no possibility of any future return; or (3) accept neither offer and close the case without any assets ever flowing into the estate. In any event, it appears that the offers of $25,000 or $50,000 will do little more than pay administrative claims.

 The Trustee has chosen to accept AIB's offer with Brown & Wood as counsel to defend the Debtor in the New York and London Actions. He frames his motion as an agreement to extend credit pursuant to § 364 of the Code. That section permits the trustee, in exchange for credit, to give the lender an administrative priority claim.[10] Higgins and Tyree package their counteroffer similarly. Neither the Funding Agreement nor Higgins and Tyree's counteroffer truly fit under § 364.[11] "[T]he purpose of allowances of administrative expenses is to encourage a debtor's creditors and other parties to continue to provide services which will aid the debtor in a successful reorganization." *In re Lease–A–Fleet, Inc.*, 148 B.R. 419, 425 (Bankr.E.D.Pa.1992). These pur-

**10.** Code § 364(b) provides that "[t]he court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a), allowable under section 503(b)(1) of this title as an administrative expense." 11 U.S.C. § 364(b). Under § 503(b)(1), extensions of credit for which priority is sought must be actual and necessary costs and expenses of preserving the estate. *See* 11 U.S.C. § 503(b)(1).

**11.** I note, however, that were I to decide this case under § 364 I would reach the same conclusion. Indeed, I have considered all the necessary factors and would conclude that the Funding Agreement is an "actual, necessary cost and expense of preserving the estate." 11 U.S.C. 503(b)(1)(A).

poses are not served here. Rather, each proposal is really a settlement that seeks to have a creditor prosecute and defend causes of action for the Trustee. Accordingly, I treat them as such.

### A. Approval of the Settlement under § 9019 of the Code

■ The Bankruptcy Court's obligation is to determine whether a settlement is in the best interests of the estate before approving it. See Fed.R.Bankr.P. 9019;[12] In re Energy Co-op., Inc., 886 F.2d 921, 927 (7th Cir.1989); In re Drexel Burnham Lambert Group, Inc., 134 B.R. 499, 505 (Bankr. S.D.N.Y.1991). A decision to either accept or reject a compromise and settlement is within the discretion of the court. See Fischer v. Pereira (In re 47–49 Charles St. Inc.), 209 B.R. 618, 620 (S.D.N.Y.1997). In applying its discretion, the court may not act arbitrarily or willfully, but must act "with regard to what is right and equitable under the circumstances and the law, and dictated by the reason and conscience of the judge to a just result." Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 75 L.Ed. 520 (1931); In re Lion Capital Group, 49 B.R. 163, 176 (Bankr.S.D.N.Y.1985).

■ It is not necessary for me to conduct a "mini trial" to determine the merits of the underlying litigation. Rather, the court's responsibilities are to "familiarize itself with all facts necessary for an intelligent and objective opinion, canvass the issues, and see whether the settlement falls below the lowest point in the range of reasonableness." In re W.T. Grant, 699 F.2d 599, 608 (2d Cir.), cert. denied sub nom. Cosoff v. Rodman, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); In re Ionosphere Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y.1993), aff'd, 17 F.3d 600 (2d Cir.1994); In re Purofied Down, 150 B.R. 519, 522 (S.D.N.Y.1993). Significantly, that test does not contemplate that I substitute my judgement for the Trustee's, but only that I test his choice for reasonableness. See

Hill v. Burdick (In re Moorhead Corp.), 208 B.R. 87, 89 (1st Cir. BAP 1997); see also Depo v. Chase Lincoln First Bank, N.A., 77 B.R. 381, 384 (N.D.N.Y.1987), aff'd, 863 F.2d 45 (2d Cir.1988). If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.

■ The "range of reasonableness" must encompass several benchmark principles. Foremost, the settlement must be supported by adequate consideration, be fair and equitable, and be in the best interests of the estate. See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson, 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968); In re Ionosphere Clubs, Inc., 156 B.R. at 426.

■ I must look to all factors relevant to a "full and fair assessment of the wisdom of the proposed compromise." In re Purofied Down, 150 B.R. at 522. These factors include:

(1) The balance between the likelihood of the plaintiff or the defendant's success should the case go to trial as compared with the benefits of the settlement without the expense and delay of a trial;

(2) The prospect of a complex and protracted litigation if the settlement is not approved;

(3) The proportion of creditors who do not object to, or who affirmatively support, the proposed settlement;

(4) The proposed benefits to be received;

(5) The nature and breadth of releases to be issued as a result of the settlement; and

(6) The extent to which the settlement is truly the product of arms' length bargaining and not the product of fraud or collusion.

In re Best Prods. Co., 168 B.R. 35, 50 (Bankr. S.D.N.Y.1994); In re Fugazy, 150 B.R. 103, 106 (Bankr.S.D.N.Y.1993).

**12.** Rule 9019 of the Federal Bankruptcy Rules provides:
(a) On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the Debtor, and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.
Fed.R.Bankr.P. 9019.

The Southern District has "further elaborated" upon these factors to include a weighing of the competency and experience of counsel. *See In re Drexel Burnham Lambert, Inc.*, 134 B.R. at 496–97; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y.1994). I may credit and consider the opinion of counsel that the settlement is fair and equitable, *In re Purofied Down*, 150 B.R. at 522, and give weight to the competency and experience of counsel who support the settlement. *See In re Drexel Burnham Lambert, Inc.*, 134 B.R. at 496. I may also look to the competency and judgment of the Trustee. *See In re Purofied Down*, 150 B.R. at 522; *In re Drexel Burnham Lambert, Inc.*, 134 B.R. at 505. However, the best interests of the creditors requires more than the trustee's assertion, or a request for reliance on his judgment. *See In re Lion Capital*, 49 B.R. 163, 190 (Bankr. S.D.N.Y.1985). Similarly, the court may not "simply accept a trustee's word that the settlement is reasonable, nor may he merely rubberstamp a proposal." *In re Energy Coop.*, 886 F.2d at 924; *In re Ionosphere*, 156 B.R. at 426. Additionally, while the court must consider the objections of parties in interest, they do not control. *See In re A & C Properties*, 784 F.2d 1377, 1382 (9th Cir.), *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 758 (Bankr. S.D.N.Y.1992).

B. *AIB's Prosecution of the Trustee's Cause of Action*

There is no express authority in the Code that permits a creditor to bring suit, and recover assets, on behalf of the estate. However, the Second Circuit has held that a creditors' committee has an implied, but unqualified, right "to initiate proceedings only when the trustee or debtor in possession unjustifiably fail[s] to bring suit or abuse[s] its discretion in not suing . . . ." *Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.)*, 779 F.2d 901, 904 (2d Cir.1985) (permitting creditors' committee to sue to avoid preferential transfer under authority of 11 U.S.C. §§ 1103(c)(5) and 1109(b)). Of course, bankruptcy court approval is required. *Id.* Other courts have expanded the Second Circuit's rule to permit individual creditors to sue on behalf of the debtor or the trustee. *See First Alabama Bank v. Shelby Motel Group, Inc. (In re Shelby Motel Group, Inc.)*, 123 B.R. 98, 102 (N.D.Ala.1990) (reversing bankruptcy court which denied creditor standing to sue on behalf of debtor); *Spring Service Texas, Inc. v. J.R. McConnell (In re McConnell)*, 122 B.R. 41, 44 (Bankr.S.D.Tex.1989) (not finding "extraordinary circumstances" to permit a creditor to sue on behalf of the debtor); *In re V. Savino Oil & Heating Co., Inc.*, 91 B.R. 655 (Bankr.E.D.N.Y.1988) (same).

A creditor may sue on behalf of the trustee or the debtor in possession where there are extraordinary circumstances or the trustee abuses his discretion. *See Mihnlong Enters., Inc. v. New York Int'l Hostel, Inc. (In re New York Int'l Hostel, Inc.)*, 157 B.R. 748, 753 (S.D.N.Y.1993); *see also In re McConnell*, 122 B.R. at 44 (holding to extraordinary circumstance rule); *In re V. Savino Oil & Heating Co., Inc.*, 91 B.R. 655 (same). Courts have summarized the principles in *In re STN Enters.* to require three conditions in order to permit a creditor to sue on behalf of the estate: (1) the claim must be colorable; (2) the intervention must be brought on behalf of the estate; and (3) the trustee or debtor-in-possession has unjustifiably refused to bring the suit or abused its discretion in not suing. *See In re McConnell*, 122 B.R. at 44.

## DISCUSSION

This is an unusual case. Against a background of failed real estate ventures and allegations of wrongdoing that includes allegations of trans-Atlantic fraud, ponzi schemes, tax evasion, and collusion, one must consider a decade of litigation and conflict to truly understand the disputes. The parties have waged war on both sides of the Atlantic Ocean for years. This court is their latest battlefield. It will not be their last.

The Trustee and his counsel each endorse the AIB plan. Higgins and Tyree object to the proposed Funding Agreement and assert

that their "offer" is better and higher and must be accepted by the Trustee. More than thirty other creditors have not appeared or objected to the AIB proposal or endorsed the Higgins and Tyree counteroffer. With this in mind, I turn to the issues at hand.

There are two narrow, but intertwined, issues before me. First, whether the Trustee's judgment to accept AIB's proposed Funding Agreement, rather than Higgins and Tyree's counteroffer, meets the lowest level of reasonableness standard. *See In re W.T. Grant*, 699 F.2d 599, 608 (2d Cir.), *cert. denied sub nom. Cosoff v. Rodman*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y.1993), *aff'd*, 17 F.3d 600 (2d Cir.1994); *In re Purofied Down*, 150 B.R. 519, 522 (S.D.N.Y.1993). Second, is whether it is in the best interests of the Debtor's creditors to allow AIB to prosecute the Trustee's cause of action. To decide these questions, I need neither speculate on nor decide the merits of the numerous pending actions. The allegations of fraud and collusion on the part of the Debtor and AIB do not factor into my decision. Approval of the Funding Agreement under § 9019 and allowing AIB to prosecute the Trustee's claim turns on the same issue: whether the creditors' best interests are protected. Accordingly, I analyze them together.

The first question to be answered is not which offer is best, but in whom is lodged the authority to initially decide which course of action is best. That authority is in the Trustee. My function is to review the Trustee's decision.

On the one hand, AIB offers the estate $25,000 and a potential recovery if it is successful in either the New York Action or the London Action. It is possible that the estate may ultimately receive nothing more than the initial $25,000 payment from AIB. On the other hand, Higgins and Tyree offer the estate $50,000. In exchange, the estate is to settle the New York Action and have a judgment entered against it.

The Trustee chose to accept AIB's offer. His decision does not fall below the lowest point of reasonableness. This estate is administratively insolvent. Any money it receives is a clear benefit. The Funding Agreement allows for a potential future recovery of additional monies. Higgins and Tyree's offer, while $25,000 more than the Funding Agreement, closes the door to future recoveries. If AIB prosecutes the Trustee's claim and either loses or does not secure a return to the estate, the Trustee retains the $25,000 Payment and pays whatever administrative costs the estate has. The estate's creditors would be in essentially the same position as if the Trustee chose Higgins & Tyree's "counteroffer." [13] Under their plan, the Trustee could use $50,000 to pay the estate's administrative expenses. In the end, the $50,000 will not be, at best, enough to make more than a .0042% distribution to creditors. However, should AIB be successful, some money will come to the estate to the benefit of creditors. The Trustee's acceptance of AIB's plan is reasonable. It is the only hope of providing a benefit to the creditors.

This case presents extraordinary circumstances which permits the Trustee to have AIB prosecute and defend claims on behalf of the Debtor. The litigation background, which I discussed above, is clearly extraordinary. In addition, this case presents extraordinary circumstances because the Trustee cannot, or will not, prosecute a claim because the estate is administratively insolvent. *See Mihnlong Enterprises, Inc. v. New York Int'l Hostel, Inc. (In re New York Int'l Hostel, Inc.)*, 157 B.R. 748, 753 (S.D.N.Y.1993) (requiring extraordinary circumstances). The goal here is to find some possibility of paying creditors. If the Trustee does not accept the AIB Funding Agreement, under any other plan, there is no potential for a return to the creditors. It is for these reasons that I approve the Funding Agreement.

---

**13.** I note that the Debtor's schedules listed its total liabilities as $5,860,707. Assuming that all of the additional $25,000 of the Higgins and Tyree offer goes to the unsecured creditors, such creditors would receive less than .0042% of their claims. If AIB is successful in the New York and London Actions and the Debtor receives the full $500,000, unsecured creditors would receive a distribution of about 8.5% on their claims.

Higgins and Tyree argue that the underlying fraud issues make it inequitable for me to approve the Funding Agreement. The issue of fraud is not before me and I am not required to conduct a mini trial to determine the merits of the underlying litigations. *See In re W.T. Grant*, 699 F.2d 599, 608 (2d Cir.), *cert. denied sub nom. Cosoff v. Rodman*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983).

AIB may prosecute and defend the Trustee's causes of action in the New York and London Actions. AIB may select counsel of its choosing. AIB and its attorneys have a fiduciary obligation to the estate. Accordingly, I do not reach the issue of approving Brown & Wood's retention as Special Counsel to the Trustee.

## CONCLUSION

For the reasons set forth above, the Trustee's motion to approve the Funding Agreement is granted. I do not reach the issue of Brown & Wood's retention as Special Counsel to the Trustee.

Settle Order.