**In re PUROFIED DOWN PRODUCTS CORP., Debtor.**

**92 Civ. 1680 (PKL).**

United States District Court,
S.D. New York.

Jan. 12, 1993.

Ruskin, Moscou, Evans & Faltischek, P.C., Mineola, NY (Jeffrey A. Wurst, of counsel), for appellant Fleet Factors Corp. by its Ambassador Factors Div.

Marc Stuart Goldberg & Associates, P.C., New York City (Neil Berger, of counsel), for appellee Marc Stuart Goldberg, Individually and as Trustee of the Estate of Purofied Down Products Corp., Debtor.

## OPINION AND ORDER

LEISURE, District Judge,

This is an appeal from an Order of the Honorable Tina L. Brozman, United States Bankruptcy Judge, Southern District of New York, entered on January 27, 1992. Upon application of Marc Stuart Goldberg (the "Trustee"), the court below approved the settlement of certain claims by Mackman Realty Corp. ("Mackman") against the bankruptcy estate of Purofied Down Products Corp., the Trustee, individually and in his capacity as Trustee, and the Trustee's law firm. As this matter is considered a core proceeding, the standard of review provided by Bankruptcy Rule 8013 controls on this appeal. Therefore, the Order appealed from may be reversed only if the Bankruptcy Court's finding that the Trustee's proposed settlement met or exceeded the lowest standard of reasonableness was clearly erroneous.

## BACKGROUND

On August 5, 1990, Purofied Down Products Corp. (the "Debtor") filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"). On April 2, 1991, the Debtor's case was converted to a case under Chapter 7 by order of the Bankruptcy Court. Marc Stuart Goldberg was appointed interim trustee of the Debtor's estate and subsequently became permanent trustee pursuant to section 702(d) of the Bankruptcy Code. The Debtor owned certain real property at 65 Railroad Avenue, Ridgefield, New Jersey, which is subject to a mortgage in favor of the Ambassador Factors division of Fleet Factors Corp. ("Ambassador"). The Debtor's obligation to Ambassador exceeds the market value of the property.

On or about April 9, 1991, the Trustee entered into an agreement to sell the property to Mackman Realty Corp. ("Mackman"). Pursuant to the agreement, Mackman delivered the sum of $350,000 to the attorneys for the Trustee, who were designated to act as escrow agent. Mackman additionally delivered the sum of $100,000 (the "carry") to be held by the Trustee and used to satisfy the cost of carrying the property, defined pursuant to the agreement as the operating deficit of the property. Pursuant to the agreement, the Trustee was entitled to retain from the carry amounts not to exceed $100,000 to satisfy the cost of carrying the property in the event that Mackman terminated the Agreement in accordance with the termination provisions therein. *See* Agreement ¶ 16.2. If, however, Mackman terminated the Agreement in violation of the provisions of the Agreement, the Trustee would be entitled to retain both the $350,000 deposit and the $100,000 carry as liquidated damages. *See* Agreement ¶ 15.2.

The Agreement became effective when the Bankruptcy Court issued an order authorizing the Trustee to enter into the contract on April 21, 1991. The contract contained several contingencies, permitting Mackman to terminate the Agreement upon notice if, in its sole discretion, it was not satisfied with the condition of the premises due to asbestos or other environmental conditions or the status of title, survey, or zoning of the premises. *See* Agreement ¶¶ 17.1, 17.2, 17.3. Pursuant to an amendment to the agreement of sale, entered into by the Trustee and Mackman as of May 31, 1991, but not submitted to the Bankruptcy Court for approval, the expiration dates of the contingencies contained in paragraphs 17.2 and 17.3 were extended to July 31, 1991. By letter dated June 7, 1991, Mackman notified the Trustee that it was terminating the contract because it was unsatisfied with the results of its investigations with respect to the contingencies provided for in paragraphs 17.2 and 17.3 of the Agreement.

Thereafter, Mackman moved the Bankruptcy Court for an order compelling the Trustee to return the entire $450,000 deposit. The Trustee opposed the motion, arguing that the amendment to the agreement was without effect absent "notice, hearing, and court approval." *See* Record on Appeal ("Record"), Ex. 7, ¶ 23. Ambassador also objected to the return of the deposit. Judge Brozman denied Mackman's motion, without prejudice to Mackman's right to bring an adversary proceeding.

Rather than filing an adversary proceeding, Mackman filed a suit in state court in New Jersey. The Trustee removed the case to the United States District Court for the District of New Jersey and moved to dismiss the action on grounds of improper venue, insufficiency of process, and insufficiency of service of process and moved in the alternative for transfer of the action pursuant to 28 U.S.C. § 1412. Mackman cross-moved to enforce a forum selection clause in the contract and to remand the case to state court. Mackman's motions were granted by the Honorable Alfred M. Wolin, United States District Judge, District of New Jersey. In the interim, despite the removal to federal court, Mackman submitted an order granting it final judgment in the state court action. That order, granted on October 9, 1991, was subsequently vacated pursuant to a stipulation and order dated November 22, 1991.

Pursuant to a Notice of Application dated November 27, 1991, the Trustee moved the Bankruptcy Court for an order authorizing settlement of the claim and compensation of his expenses with respect to the Mackman litigation. The settlement provided for the return of the deposit and the carry to Mackman, less a sum of $35,000 that would be retained by the Trustee. Approximately $18,000 of this sum had been spent in the interim to satisfy the cost of carrying the property. The Trustee explained in his application to the Bankruptcy Court that he had "expended significant time, expense and effort in connection with the Mackman litigation," and that substantial additional expense and effort would be incurred, with no certainty of a favorable result, if the litigation was not settled. *See* Record, Ex. 13, ¶ 23. Additionally, the Trustee stated his opinion that, considering the claims and defenses of the parties, the settlement was in the best interests of the estate. *See* Record, Ex. 13, ¶ 24.

Ambassador objected to the proposed settlement, arguing that the amendment to the Agreement was ineffective without court approval, that the settlement amount was grossly insufficient, and that the Trustee was likely to prevail in the underlying litigation and would achieve a substantial recovery for Ambassador's benefit. *See* Record, Ex. 18.

A hearing on the Trustee's application was held on January 2, 1992. Judge Brozman approved the settlement, finding that it was not unreasonable, and awarded the Trustee $10,000 as compensation for expenses incurred. *See* Record, Ex. 22, at 45. The Trustee, Ambassador, and Mackman each submitted proposed orders, and Judge Brozman executed a final order on January

27, 1992. The instant appeal ensued.[1]

### DISCUSSION

#### I. *Standard of Review*

■ Rule 9019(a) of the Rules of Bankruptcy Procedure gives the court the authority to approve any compromise or settlement related to a reorganization or liquidation. Fed.R.Bankr.Pro. 9019(a). A Bankruptcy Court's decision to approve a settlement should not be overturned unless its decision is manifestly erroneous and "a clear abuse of discretion." *In re Frost Bros., Inc.,* 1992 WL 373488, *4, 1992 U.S.Dist. LEXIS 18301, *12–13 (S.D.N.Y. Dec. 2, 1992); *see also In re Emerald Oil Co.,* 807 F.2d 1234, 1239 (5th Cir.1987); *In re Erickson,* 82 B.R. 97, 99 (D.Minn.1987); *In re Patel,* 43 B.R. 500, 504–05 (N.D.Ill. 1984); *In re Bell & Beckwith,* 77 B.R. 606, 611 (Bankr.N.D.Ohio 1987). This deferential standard of review is merited because:

> [a] bankruptcy court is in the best position, as the ... ongoing supervisory court for the bankruptcy proceeding, to determine whether a compromise is in the best interest of the estate and "fair and equitable."

*In re Emerald Oil Co.,* 807 F.2d at 1239 (quoting *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)).

In *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* the Supreme Court described the procedures to be followed in determining whether a settlement agreement should be approved. 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). The Court advised that:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge

should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.

390 U.S. at 424, 88 S.Ct. at 1163. Similarly, the Eighth Circuit held in the oft-cited decision *Drexel v. Loomis* that the court evaluating a settlement should consider: (1) the probability of success in the litigation, (2) the difficulties that may be encountered in collection, (3) the complexity of the litigation and the attendant expense, inconvenience, and delay, and (4) the "paramount" interest of the creditors. *Drexel v. Loomis,* 35 F.2d 800, 806 (8th Cir.1929); *accord In re Carla Leather, Inc.,* 44 B.R. 457, 466 (Bankr.S.D.N.Y.1984), *aff'd,* 50 B.R. 764 (S.D.N.Y.1985); *In re Lion Capital Group,* 49 B.R. 163, 175 (Bankr.S.D.N.Y. 1985).

■ The reviewing court need not conduct its own investigation concerning the reasonableness of the settlement and may credit and consider the opinion of the Trustee and counsel that the settlement is fair and equitable. *See In re Int'l Distribution Centers, Inc.,* 103 B.R. 420, 422–23 (S.D.N.Y.1989); *In re Carla Leather,* 44 B.R. at 466. Similarly, the court need not conduct a 'mini-trial' to determine the merits of the underlying litigation. Rather, the court's responsibility is "to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.,* 699 F.2d 599, 609 (2d Cir.) (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir.), *cert. denied,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972)), *cert. denied,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). The lenient standards concerning approval of settlements and a limited scope of review reflect the considered judgment that little would be saved by the settlement process if bankruptcy courts could approve settlements only after an exhaustive investigation and determination of the underly-

---

1. Ambassador does not appeal from that portion of Judge Brozman's order awarding the Trustee $10,000 as compensation for expenses incurred with respect to the Mackman litigation.

ing claims. The applicable standards encourage courts to approve settlements in bankruptcy proceedings and related actions.

■ In sum, informed by the opinion of the parties, the Trustee, and counsel and its familiarity with the litigation, the bankruptcy court must make a considered, independent judgment as to whether a settlement is fair and equitable and "in the best interests of the estate." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. at 424, 88 S.Ct. at 1163; *see also In re Int'l Distribution Centers, Inc.,* 103 B.R. at 422.

## II. *The Bankruptcy Court's Approval of the Settlement*

■ In approving the settlement as within the bounds of reasonableness, Judge Brozman ruled that:

> Given that the Trustee has in place another sale for only $200,000 less than the Mackman sale, I cannot say that this settlement, albeit it's a relatively blown out one, falls below the lowest level of reasonableness.
>
> In passing upon the propriety of settlements, it is not the function of the Bankruptcy Court to substitute judgment for the judgment of the Trustee. Rather it is the task of the Court to determine whether or not the Trustee's judgment is adequate so that the Bankruptcy Judge can approve it, and no more.
>
> *Given the nature of the disputes which have been raised here and the cost of the litigation, I can't say that this is an unreasonable settlement,* particularly since the Trustee has asserted, without any rebuttal from Ambassador, that there was no cost of the carry for Mackman to satisfy, this is not to say that is so.
>
> I am prepared to approve this settlement notwithstanding that. I think the settlement can be approved and I'll enter an Order to that effect.

Record, Ex. 25, at 44–45 (emphasis supplied). To accommodate Ambassador's objections to the settlement, Judge Brozman suggested that Ambassador could take control of the litigation and pursue it to completion, provided that it indemnified the Trustee and the estate for any resultant liability. *See* Record, Ex. 25, at 45–46. While Ambassador suggests that this offer demonstrates that Judge Brozman improperly considered the Trustee's possible exposure to damages in passing upon the reasonableness of the settlement, a full reading of the record demonstrates that Judge Brozman was merely attempting to accommodate the desires of all concerned parties. Judge Brozman's ruling approving the settlement properly was premised upon consideration of the issues involved in the litigation, the costs attendant to the defense of the action, and the uncertainty of success.

Judge Brozman recognized that she was required to determine whether the settlement fell below the lowest point in the range of reasonableness, pursuant to the Second Circuit's ruling in *In re W.T. Grant,* 699 F.2d at 609. Similarly, Judge Brozman properly considered the Trustee's opinion that the settlement was fair and equitable. Rather than giving that opinion conclusive effect, however, Judge Brozman independently evaluated the arguments of the Trustee and Ambassador and appraised the complexity of the litigation, the estimated costs and delay that would be suffered if the litigation was not settled, and the best interests of the estate. Recognizing that the actual damage to the estate from Mackman's termination of the agreement had been relatively small, and considering the risks inherent in pursuing a recovery of the deposit as liquidated damages, Judge Brozman determined that the settlement did not fall below the lowest point in the range of reasonableness.

This Court cannot say that Judge Brozman's determination was clearly erroneous. Judge Brozman correctly stated the applicable standards and applied them to the proposed settlement. Although the dollar value of the settlement is rather low, the uncertainty of the outcome of the litigation and the costs of pursuing the litigation and carrying the property counseled against re-

**524**

jection of the settlement. At a minimum, the estate would have suffered the costs of discovery and motion practice in the state court action. Although Ambassador asserts that the estate would have been successful in a motion for summary judgment in the New Jersey action, this Court is less certain that the estate could prove that no material facts were in issue. Thus, both the Trustee and Judge Brozman recognized that the litigation might require a trial on the merits, at great expense to the estate, if a settlement accord was not reached by the parties and approved by the bankruptcy court. Judge Brozman was fully familiar with the facts of the underlying dispute, as she previously had ruled on the Trustee's application for permission to enter into the agreement and on Mackman's motion for an order compelling the Trustee to return the deposit. Additionally, Judge Brozman properly considered the arguments and positions of the Trustee and Ambassador in determining whether the settlement should be approved under the standard enunciated by the Supreme Court in *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson.*

Accordingly, this Court must conclude that Judge Brozman's approval of the settlement was not clearly erroneous. The Court concurs with the determination of Judge Brozman that it cannot be said that "this settlement, albeit it's a relatively blown out one, falls below the lowest level of reasonableness." In approving the settlement, Judge Brozman properly acted within the broad discretion afforded bankruptcy court judges with respect to the review of proposed settlements.

### CONCLUSION

For the foregoing reasons, the Order of the Bankruptcy Court authorizing the Trustee to enter into the settlement and awarding the Trustee $10,000 compensation hereby is affirmed in whole.

SO ORDERED.