**In re George J. MAYNARD and
Patricia E. Maynard,
Debtors.**

**Douglas J. Wolinsky, Trustee Plaintiff**

**v.**

**George J. Maynard and Patricia
E. Maynard, Defendants.**

**Bankruptcy No. 00–10193.
Adversary No. 00–1020.**

United States Bankruptcy Court.
D. Vermont.

Jan. 31, 2002.

Douglas J. Wolinsky Esq., Burlington, VT, for Chapter 7 Trustee.

Todd Taylor, Esq., Burlington, VT, for Debtor/Defendants.

## *MEMORANDUM OF DECISION UPON REMAND DENYING MOTION TO AP-PROVE AMENDED SETTLEMENT*

COLLEEN A. BROWN, Bankruptcy Judge.

On remand, this Court evaluates the proposed settlement of a § 727 action which it previously rejected when it held that § 727 actions could not be settled, as a matter of law. The United States District Court for the District of Vermont (Sessions, J.) reversed the Memorandum of Decision Denying Motion to Approve Amended Settlement issued by this Court on February 9, 2001, holding that there should not be a *per se* rule denying settlement of § 727 actions. *In re Maynard,* 269 B.R. 535 (D.Vt.2001). After considering the merits of this particular settlement proposal, in light of both the specific facts and circumstances presented and the guidelines set forth in the District Court's ruling, this Court denies approval of the instant settlement proposal, for the reasons set forth below.

The trustee has indicated that he commenced the adversary proceeding to deny the debtors' discharge because after diligent inquiry he was persuaded that this was clearly a case where the debtors had intentionally made a false oath and, therefore, were not entitled to a discharge under § 727(a)(4)(A). The debtors' schedules indicated that they had received a $2,000 loan from their son [known as "new value" under § 547(c)(4) ] to offset what would have otherwise been a preferential conveyance they made to him. Since the trustee determined that in fact the debtors had never cashed the check, he concluded that this was a "black and white" case under § 727, and filed an adversary proceeding complaint. The trustee also wanted to address the fact that the debtors had requested the $2,000 loan from their son on the advice of their bankruptcy attorney and the trustee intended to raise the question of whether this was proper legal advice. The debtors voluntarily turned over the check that they had received from their son to the trustee, and hence this became an asset case. However, the trustee has indicated that it became clear to him during the course of pursuing the litigation that (1) there would be significant legal expense incurred in litigating the complaint, (2) the costs of litigation might well "eat up" the entire $2,000 on hand, and (3) it would be difficult to prove wrongful intent by the debtors.

After negotiations with the debtors, the trustee reached a stipulation whereby the debtors would pay $3,000 to the trustee in exchange for the dismissal of the § 727 action. The trustee explained both at the initial hearing and at the post-remand hearing held on December 4, 2001 that this $3,000 figure was derived from the value of the legal services expended by the trustee through the date the settlement was presented to the Court. The trustee's goal was to avoid having the estate's assets spent entirely on attorney's fees incurred by the trustee. The trustee reasoned that if there were no additional assets paid into the estate then all of the assets currently in the case [i.e. $2,000] would be subject to the superior interest of the trustee; and if the Court agreed that $3,000 represented the reasonable value of the legal services rendered by the trustee's attorney in the

adversary proceeding, without approval of this settlement it appeared to the trustee that all $2,000 of the estate's assets would be awarded to the trustee's attorney and there would be no distribution to creditors. The trustee argues that he did not believe it was appropriate for all assets derived by the trustee to be used for trustee compensation. To avoid that result, the trustee and the debtors reached an agreement whereby the debtors would pay into the estate enough cash to cover the trustee's legal fees so that the $2,000 in the debtors' bankruptcy estate would be available *in toto* for distribution to the unsecured creditors.

On its face, this settlement may appear to benefit all parties: the debtors obtain their discharge for a modest fee, the trustee gets reimbursed for all legal fees he incurred for zealously fulfilling his statutory obligation to investigate and pursue potential wrongdoing by debtors, and the creditors receive a dividend. While this Court believes it appropriate for trustees to be fairly compensated for diligent performance of their duties, it also believes that the Court must carefully scrutinize any settlement in which the consideration for such trustee compensation is the discharge, or denial of discharge, of the debtor. In this instance, in order for the trustee to be compensated for his efforts, the debtors would be compelled to pay a fee in order to obtain their discharge, notwithstanding the fact that the record before the Court suggests that the trustee might not be able to prove the elements of fraudulent conduct set forth in § 727.

The District Court has made clear that it believes that a *per se* rule prohibiting settlement of § 727 actions is inappropriate, as "not justified by the language of the statute or the rule [Federal Rule of Bankruptcy Procedure 7041]," *Id.*, at 542, and emphasized that the Bankrupt-

cy Court must review each proposed settlement carefully and maintain the balance between expediency in the individual bankruptcy case and the integrity of the entire bankruptcy system.

In addition to the important public interest in upholding the integrity of the bankruptcy system and preventing tainted compromise, there is a public interest in encouraging just, speedy, inexpensive, and final resolution of disputes... Bankruptcy judges, with their specialized expertise and experience, and their roles as guardians of the integrity of the bankruptcy system, are excellently suited to resolve any tension inherent in these public policy objectives in the bankruptcy context. Requiring bankruptcy court oversight of the proposed resolution of an objection to discharge effectively ensures that private interests in a particular settlement do not operate to the detriment of the estate, the creditors as a whole, or the bankruptcy system. The bankruptcy court should not categorically disapprove settlement of a complaint objecting to discharge, but should use its judgment to approve a settlement only if it is fair and equitable and in the best interests of the estate. [citation omitted]

*Id.* Accordingly, this Court requested that the trustee appear at the December 4th hearing to set forth the specific basis for alleging that the instant settlement met the criteria established by the District Court. The District Court provided a roadmap for this Court to follow in assessing the settlement in this case:

On remand, the Court should make an informed, objective judgment as to whether the proposed compromise is fair and equitable, assessing the probability of success should the claim be litigated, estimating the 'complexity, expense, and likely duration of [the] litigation, the

possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.' *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424, [88 S.Ct. 1157, 20 L.Ed.2d 1] (1968). *See also Myers v. Martin (In re Martin),* 91 F.3d 389, 393 (3d Cir. 1996) (applying standard to settlement agreement in Chapter 7 case); *In re Purofied Down Prods., Corp.,* 150 B.R. 519, 523 (S.D.N.Y.1993) (same). *Id.,* at 543. This Court interprets the *TMT* case to require approval of § 727 settlements if the settlement is fair and equitable, to wit, where

(1) the court is unable to predict the likely outcome of litigation, i.e., the legal issue raised is too close to call;

(2) the trial of the claim would be complex, lengthy or expensive;

(3) the settlement proposal provides more cash than the plaintiff is likely to recover even if successful because of anticipated impediments to collection; and

(4) the Bankruptcy Court, in its discretion, finds that principles of equity and fairness would be furthered by approval of the proposed settlement.

 Based upon the information contained in the Stipulated Facts filed in support of the Motion to Approve Amended Settlement dated December 27, 2000 [Dkt. # 22–1] and the statements of the trustee at the December 4th hearing, this Court cannot conclude that this is such a close question on the merits. The stipulated facts demonstrate that the debtors were forthcoming concerning the subject loan transaction with their son, that they relied upon advice of counsel and adamantly deny any wrongdoing. Although the Court makes no determination on the merits of the trustee's allegations, the stipulation certainly suggests that notwithstanding the debtors' allegedly false statement about receipt of funds from their son, there is a significant indication that the debtors lacked the requisite fraudulent intent to satisfy the statute. *See* § 727(a)(4)(A); *see also In re Segal,* 195 B.R. 325 (Bankr.E.D.Pa.1996); *In re Arcuri,* 116 B.R. 873 (Bankr.S.D.N.Y.1990). Secondly, the Court does not find that a trial would be complex, lengthy or expensive; on the contrary, it appears that the parties have stipulated to all of the relevant facts and the only issue to be tried would be the debtors' intent to defraud. Third, it does not appear from the record that there is any reason to expect that the trustee would have difficulty collecting on any judgment that may be obtained; the relief the trustee would achieve if successful would be a denial of discharge and if there were any cash component to the judgment it would likely be no more than the attorneys' fees incurred by the trustee, and the debtors have evidenced a willingness and ability to make such a payment.

It is this Court's position that debtors have an absolute right to a discharge unless there is a successful § 727 action, *see In re Emery,* 201 B.R. 37 (E.D.N.Y.1996), *aff'd,* 132 F.3d 892 (2nd Cir.1998), or the parties have demonstrated that a proposed agreement to settle a § 727 action complies with Rule 7041 of the Federal Rules of Bankruptcy Procedure and is fair and equitable, under the objective criteria set forth in *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). While this Court acknowledges that the expediency provided by settlement of litigation is critical to the efficient functioning of the courts, the instant proposed settlement is not fair and equitable. Accordingly, under the particu-

lar circumstances presented by this case, the Trustee's *Motion to Approve the Amended Settlement* is denied.