In re HOMESTEADS COMMUNITY AT NEWTOWN, LLC, Debtor,

In re Nuevo Pueblo, LLC, Debtor.

Nos. 3:13–CV–00602 (CSH),
3:13–CV–00662 (CSH).

United States District Court,
D. Connecticut.

Signed July 31, 2014.

2

Patrick W. Boatman, Law Offices of Patrick W. Boatman, LLC, East Hartford, CT, for Debtors.

Amy E. Markim, William S. Fish, Jr., Hinckley Allen Snyder LLP, Hartford, CT, Dean W. Baker, Law Offices of Dean Baker, New Haven, CT, for Appellee.

### RULING ON APPEAL OF BANKRUPTCY COURT'S DECISION

HAIGHT, Senior District Judge:

In this bankruptcy case, Debtors Homesteads Community at Newtown, LLC

("HCN") and Nuevo Pueblo, LLC ("NP") appeal from the decision and order of Chief Judge Lorraine Murphy Weil, United States Bankruptcy Court of the District of Connecticut, approving a settlement agreement reached among the Chapter 7 Trustees of two related cases with the various interested parties. For the purposes of the appeal, the two related Chapter 7 bankruptcy proceedings, *In re Homesteads Community at Newtown, LLC* (3:13–cv–00602–CSH) and *In re Nuevo Pueblo, LLC* (3:13–cv–00602–CSH), are consolidated.[1]

There were two settlement agreements made between the parties in Bankruptcy Court, a "Global Compromise" proposed jointly by the Trustees, which Judge Weil did not approve in full [Doc. 16, Ex. 22], and a subsequent "Revised Compromise" of a more limited scope [Doc. 16, Ex. 35], which Judge Weil found reasonable. The appeal specifically targets the piece of the settlement that pertains to the Konover Mechanic's Lien-the Debtors oppose the proposed settlement of $450,000 from the HCN estate to Konover Construction Corp. ("Konover") in the Revised Compromise. This Ruling decides the appeal [Doc. 2] and the pending Motions to Stay [Docs. 10, 12].

## I.  FACTS

The Konover dispute, at issue in this appeal, is one of a series of adversary proceedings between the two estates and their creditors. The HCN bankruptcy case was commenced by the voluntary filing of Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Connecticut at New Haven on February 2, 2004, and was thereafter converted to Chapter 7 bankruptcy on October 12, 2004. *Daly v. Konover Constr. Corp. (In re Homesteads Cmty. at Newtown, LLC),* 390

B.R. 32, 34–35 (Bankr.D.Conn.2008). The NP case was an involuntary filing of Chapter 7 bankruptcy in the same court on May 14, 2004.

At the time of the bankruptcy filings, the HCN Debtor owned commercial real estate located at 12–16 Pocono Road in Newtown, Connecticut (herein "the HCN Property" or "Lot 2") and the NP Debtor owned property at 164, 168, and 170 Mt. Pleasant Road, Newtown (herein "The NP Property") Appellants' Brief, Doc. 14, p. 10; Judge Weil's Partial Mem. of Decision and Order (herein "Initial Decision"), Doc. 16–22, p. 19, 25. 12–16 Pocono Road was originally part of a larger parcel of 64 acres owned by the Sedor family until the Town of Newtown Planning and Zoning Commission approved a subdivision application on May 20, 1999, dividing the land into two lots; the other lot become known as 166 Mt. Pleasant Road. Initial Decision, p. 19. On September 28, 1999, The Homesteads at Newtown, LLC ("THN"), acquired 166 Mt. Pleasant Road (herein "THN property") and separately, HCN acquired 12–16 Pocono Road. Appellants' Brief, p. 10.

The THN and HCN properties were land to be used to construct and develop an elderly care community, The Homesteads. Initial Decision, p. 18. The project was intended to have two phases: phase one was a 100–unit assisted living facility developed by THN, and phase two was a 162 congregate care facility and 38 age-restricted condominiums to be built on the HCN Property. *Id.* This senior care project is the genesis of this bankruptcy case duo and the complicated web of adversary proceedings therein, including the Konover dispute at issue in the present appeal. This opinion will only recount the

---

1. This Court entered a Consolidation and Scheduling Order on May 30, 2013 [Doc. 11].

relevant facts necessary for the adjudication of this appeal.

## A. Konover Mechanic's Lien

In the Summer and Fall of 1999, THN entered into a construction contract of $11,326,850 with Konover for the assisted living facility. *Id.* at 20. Part of the contract was a Memorandum of Agreement for the Construction of Off–Site Improvements, dated July 16, 1999, which called for Konover to perform certain work outside of the THN Property. *Id.* While Konover disputes it, the Trustees and the Debtors agree that none of the off-site work was to be performed on the HCN Property. *Id.* The final operative contract was signed on or about October 27, 1999, and Konover commenced work on the THN Project on or about October 20, 1999. *Id.* at 21.

The HCN Debtor was not a party to any of THN's contracts with Konover. *Id.* at 21. The assisted living project is funded by Arbor National Commercial Mortgage ("Arbor") through HUD, which required that it be acquired, developed and financed completely separately from the congregate care facility and condominiums. *Id.* HCN was a not a beneficiary or a guarantor of the Arbor loan. *Id.* Instead, HCN acquired separate non-HUD financing, and commenced construction of congregate care facility and age-restricted condominiums, using a different general contractor. *Id.* at 22. Konover was not involved in the

construction of HCN Project, despite being aware of it. *Id.*

Thereafter, a dispute arose between THN and Konover on the payment of work performed by Konover on the THN Property, and on or about May 16, 2001, Konover filed a blanket Certificate of Mechanic's Lien (herein "the Konover Lien") in the amount of $1,290,606 against the THN Property (Lot 1) and the HCN Property (Lot 2). *Id.* The Konover has only billed THN; and had never requisitioned or otherwise billed the HCN Debtor. *Id.*

At the time that Konover recorded its Mechanic's Lien, the appellants argued that Konover had been paid, by THN, ninety-five (95%) percent of the original contract price for site work that could potentially affect both lots, totaling $2,164,718.[2] Appellants' Brief, p. 32. Judge Weil's Initial Decision noted "THN paid Konover many millions of dollars from the Arbor construction loan through the requisition process." Initial Decision, p. 22.

## B. Bankruptcy Court Proceedings

After its bankruptcy filing, on February 19, 2004, the HCN Debtor commenced an adversary proceeding against Konover[3] to discharge the Mechanic's Lien and seek related relief. Appellants' Brief, p. 11. As grounds for the adversary proceeding, the HCN Debtor alleged that Konover lacked legal basis to file a Mechanic's Lien on the HCN Property, as the Mechanic's Lien should have been limited to the THN

---

**2.** The remaining $9,162,132 of the contract price represented charges to construct the building on the THN Property, without any distinguishable benefit to the HCN Property. Appellants' Brief, p. 32.

**3.** Konover AP Case No. 04–3037. The Appellants interestingly noted in their brief that "[s]ince that time, no one has sought a judicial determination about the validity of Kon-

over's Lien against HCN's Property at any level or in any amount." Appellants' Brief, p. 11. While later attempts to determine the validity of the lien, described in the following paragraph, were futile or aborted prematurely, the determination of the merits of lien and the litigation required for its proper adjudication was certainly considered by the Bankruptcy Court in its approval of the settlement.

Property. Initial Decision, p. 23. The HCN Debtor further alleged that this wrongfully attached Mechanic's Lien severely disrupted the project, setting in motion events leading to the HCN Debtor's filing for bankruptcy and the destruction of its business. *Id.*

The Konover adversary proceeding continued for many years due to a variety of reasons that are not completely clear to this Court, but perhaps also not completely relevant. HCN Debtor's counsel, Patrick W. Boatman, sought to promptly prosecute the Konover adversary proceeding. Appellants' Brief, p. 12. Thereafter, in 2005, the Court appointed Andrew Brand as counsel in the adversary proceeding, whose illness resulted in the appointment of William Fish in 2008. *Id.* At a hearing on January 23, 2008, Attorney Fish advised the Court that he was knowledgeable about the case and would be trial ready if given a sixty-day extension of the original March trial date. *Id.* The trial, however, never took place.[4] *Id.*

In the meantime, the HCN Property was sold for $8.9 million in April 2005. *Id.* at 19. There is currently an amount of $2,787,227 in net proceeds held by the HCN Trustee, after prior distribution approved by the Bankruptcy Court. *Id.* After another $336,513.65 is paid under the first mortgage, there will be $2,432,691.56 left in the HCN estate for distribution. *Id.* The NP real property was sold for $1.41 million in January 2007. *Id.* The NP estate now holds $1,134,063 in net proceeds. *Id.*

The HCN Trustee sought the Bankruptcy Court's approval to use estate funds to mediate the Konover Adversary Proceeding in October of 2009. Appellee's Brief, Doc. 34, p. 8. The Two mediation sessions

that followed, one in November 2009 and a second in early 2010, were not successful. *Id.* On March 8, 2010, the mediator filed a "no settlement" report with the Bankruptcy Court. Initial Decision, p. 8.

Thereafter, in May 2010, the HCN Trustee filed a Motion for Summary Judgment seeking disallowance of Konover's claim, arguing its lien is without merit, and in July 2010, filed a motion to set aside Entry of Default and Motion to Dismiss or Strike the Counterclaim. *Id.* The parties battled over these motions until on February 16, 2011, Konover filed, with the consent of HCN Trustee, Motion To Vacate Existing Pre–Trial Order, Adjourn Trial Date *Sine Die,* and Stay Further Proceedings Pending Consideration of Rule 9019 Compromise and Settlement. *Id.* at 8–9. On February 18, 2011, the Bankruptcy Court granted the motion by staying all proceedings and directing that, within thirty (30) days, the parties either file a motion under Rule 9019 to seek the approval of a proposed compromise, or contact chambers immediately for a prompt scheduling/status conference. *Id.* at 9.

The HCN Compromise Motion was filed by the HCN Trustee on April 29, 2011. *Id.* The "Global Compromise," as it has come to be known, provided for the settlement of Konover's claims against HCN and NP estates for $450,000. Appellees' Brief, p. 10. In consideration for this settlement payment, Konover agreed to withdraw its unsecured claim against the NP estate in the amount of $1,290,606. At the time of the settlement, Konover's disputed senior secured claim against the HCN estate, including interest and legal fees, was in excess of $2,800,000. Appellees' Brief, p. 9; Initial Decision, p. 62. The Debtors

---

4. On July 2, 2009, the Bankruptcy Court entered a default for failure to plead against the HCN Trustee with respect to a counterclaim filed by Konover in March 2009 with its amended answer. Appellees' Opposition Brief, Doc. 34, p. 8; Initial Decision, p. 8.

objected to the approval of the Global Compromise by filing a motion to this effect on June 1, 2011. Initial Decision, p. 5. At the hearing on the approval of the proposed settlement, the HCN Trustee noted the settlement discussions with Konover were "very contentious," and explained that the costs of litigation against Konover would be significant, as the issues are complex. Appellees' Brief, p. 10; Initial Decision, p. 46.

Gary Sheldon, Konover's trial attorney, supported the position of the HCN Trustee regarding the reasonableness of the proposed settlement. Appellees' Brief, p. 10; Initial Decision, p. 32–44. He testified to his client's position that its Mechanic's Lien is legally valid, including on the *Pomarico* and the consent issues, and has first priority over other claims. Initial Decision, p. 32–44. He further noted that $450,000 was the minimum amount acceptable to Konover, only agreeable to Konover after his firm had compromised its fees. *Id.* at 42. He predicted that if the case did not settle, it would cost hundreds of thousands of dollars to continue the litigation. *Id.* Konover, however, did not provide any witness with personal knowledge of the controversy at the hearing. Appellants' Brief, p. 13.

On August 21, 2012, the Bankruptcy Court issued an Initial Decision that explicitly approved the settlement of the Konover adversary proceeding with $450,000. Judge Weil noted in her opinion that she found the Konover piece of the "Global Compromise" "reasonable (although possibly on the 'high end' of rea-

sonable) and a sound exercise of the HCN Trustee's business judgment." Initial Decision, p. 62. The Bankruptcy Court, however, had concerns about other elements of the "Global Compromise" and ordered further proceedings. Appellees' Brief, p. 11.

On October 10, 2012, the Trustees filed a Memorandum Regarding Partial Memorandum of Decision and Order re: Trustee's Joint Motion for Approval of Global Compromise, requesting the Court's approval of a simplified compromise ("Revised Compromise"), which settles four adversary proceedings including Konover. Appellants' Brief, p. 8; Appellees' Brief, p. 12.[5] The terms of the settlement remained unchanged with respect to a payment of $450,000 to Konover. After a reopened hearing and an Order of Clarification from the Court, the Bankruptcy Court issued a Memorandum of Decision (herein "Final Decision"), approving the Revised Compromise. Appellants' Brief, p. 9; Appellees' Brief, p. 12. Dissatisfied with the terms of the settlement, particularly the proposed payment to Konover, on March 25, 2013, the Debtors filed the Notice of Appeal of the Final Decision, challenging the Bankruptcy Court's approval of the agreement, which brought the matter before this Court. Appellants' Brief, p. 18.

### C. Federal Court Proceedings

The two appeals in the case were filed separately, under the docket numbers 3:13–cv–00602–CSH (HCN) and 3:13–cv–00602–CSH (NP). This Court issued a

---

5. The Revised Compromise also included the HCN Debtor withdrawing with prejudice two other adversary proceedings, the NP Debtor withdrawing two claims, and the Trustees consenting to certain payments to Franklin Construction, LLC (herein "Franklin"). Appellants' Brief, p. 8. Franklin, a successor in interest of a promissory note in favor of

Greenwich Insurance Company, has a pending claim of $1,671,015.07 against HCN estate and $1,733,274.50 against the NP estate. *Id.* at 19. According to the HCN Trustee, the HCN Debtor's payout to Konover would come out of funds otherwise paid to Franklin. *Id.* at 15.

Consolidation Order on May 30, 2013, on the basis that the appeals concern the same Bankruptcy Court decision, "raising similar issues of law and fact regarding a single ruling and record" [Doc. 11]. The appellants have previously filed separate Motions to Stay Pending Appeal in each of the two appeals [Doc. 10. 12]. The parties have since submitted briefs for the consolidated appeal and the two Motions to Stay Pending Appeal, and adeptly argued their positions in front of this Court at a Hearing on March 11, 2014 [Doc. 39]. This ruling decides all pending matters in this case.

## II. *DISCUSSION*

### A. Standard of Review

In bankruptcy matters, the district court functions as an appeals court. A bankruptcy court's conclusions of law are reviewed *de novo* and its findings of fact for clear error. *In re Delta Air Lines, Inc.*, 374 B.R. 516, 522 (S.D.N.Y. 2007) (citing *Citibank, N.A. v. Vebeliunas*, 332 F.3d 85, 90 (2d Cir.2003); *In re Johns–Manville Corp.*, 340 B.R. 49, 58 (S.D.N.Y.2006); *see also* Fed. R. Bankr.P. 8013). A bankruptcy court's determination pursuant to Bankruptcy Rule 9019 as to whether a settlement is reasonable is reviewed for abuse of discretion, which may be found only if "no reasonable man could agree with the decision" to approve the settlement. *In re Iridium Operating LLC*, 478 F.3d 452, 461 n. 13 (2d Cir.2007); *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir.1992); *In re E. 44th Realty, LLC*, No. 07–CV–8799, 2008 WL 217103, at *6 (S.D.N.Y. Jan. 23, 2008); *Delta*, 374 B.R. at 522; *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y.1993). The district court affords deference to the bankruptcy court's decision to approve a settlement, which "should not be overturned unless its decision is manifestly erroneous and a clear abuse of discretion." *E. 44th Realty*, 2008 WL 217103 at *9; *Purofied*, 150 B.R. at 522; *In re Frost Bros., Inc.*, No. 91 Civ. 5244, 1992 WL 373488, *4 (S.D.N.Y. Dec. 2, 1992).

### B. Legal Standard for Bankruptcy Court's Settlement Evaluation

"A bankruptcy court may approve a compromise and settlement if it is fair, reasonable and adequately based on the facts and circumstances before the court," in the "best interests of the estate." *E. 44th Realty*, 2008 WL 217103 at *9; *Purofied*, 150 B.R. at 522; *In re Handler*, 386 B.R. 411, 420 (Bankr.E.D.N.Y.2007); *In re Adelphia Commc'n Corp.*, 327 B.R. 143, 158 (Bankr.S.D.N.Y.2005); *See also* Fed. R. Bankr.P. 9019.

In determining whether to approve a trustee's application for settlement under Bankruptcy Rule 9019, a bankruptcy court is required to arrive at an "informed and independent judgment" on whether a settlement is fair and equitable. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968); *E. 44th Realty*, 2008 WL 217103 at *8. At the same time, courts should not substitute their judgment for that of the trustee; rather, the bankruptcy judge and the district court may "give weight to the opinions of the trustee, the parties, and their attorneys." *E. 44th Realty*, 2008 WL 217103 at *8; *Purofied*, 150 B.R. at 522; *Handler*, 386 B.R. at 421; *Adelphia*, 327 B.R. at 159. In sum, the bankruptcy judge must avoid the extremes of rubber-stamping the settlement proposal on one hand and giving too little deference to the opinions and perspectives of the trustees and interested parties on the other hand.

■ In *In re Iridium Operating LLC,* 478 F.3d 452, the Second Circuit fashioned a multi-factor test to guide courts in this Circuit in evaluating bankruptcy settlements. Courts should consider the following factors in their evaluation of a settlement:

(1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

*Id.* at 462 (citations and internal quotation marks omitted). *See also Drexel,* 960 F.2d at 292; *E. 44th Realty,* 2008 WL 217103 at *8; *Handler,* 386 B.R. at 421.

■■ The first factor, the likelihood of success compared to the benefits of the settlement, is most important in determining whether or not a settlement should be approved. *Handler,* 386 B.R. at 421; *Adelphia,* 327 B.R. at 160. "There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has [been apprised] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *TMT,* 390 U.S. at 424, 88 S.Ct. 1157; *In re Iridium Operating LLC,* No. 01 Civ. 5429, 2005 WL 756900, at *6 (S.D.N.Y. Apr. 4, 2005), *rev'd* by 478 F.3d 452 (2d Cir.2007); *Handler,* 386 B.R. at 421.

■ Nonetheless, the Second Circuit has emphasized that in evaluating a settlement, a bankruptcy judge should not decide the numerous questions of law and fact raised by the settlement, but rather "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir.1983) (citations and internal quotation marks omitted); *E. 44th Realty,* 2008 WL 217103, at *8; *Handler,* 386 B.R. at 421; *Adelphia,* 327 B.R. at 160. "This standard means that a bankruptcy court is not required to know all the relevant facts in deciding whether to approve a settlement." *E. 44th Realty,* 2008 WL 217103, at *8. It is not necessary for the bankruptcy court to rule on disputed issues of fact and law or to "conduct a 'mini-trial' on the merits of the underlying litigation." *Purofied,* 150 B.R. at 522; *Handler,* 386 B.R. at 421; *Adelphia,* 327 B.R. at 159; *In re Ashford Hotels,* 226 B.R. 797, 802 (Bankr.S.D.N.Y. 1998). This standard means that a bankruptcy court is only required to know sufficient facts to make an "informed and independent judgment" on the reasonableness of the settlement, but not required to decide on all the questions of law and facts as would in a summary disposition or trial. As aptly noted by Judge Leisure in *Purofied:*

The lenient standards concerning approval of settlements and a limited scope of review reflect the considered judgment that little would be saved by the settlement process if bankruptcy courts could approve settlements only after an exhaustive investigation and determination of the underlying claims. The ap-

plicable standards encourage courts to approve settlements in bankruptcy proceedings and related actions.

*Purofied,* 150 B.R. at 522–23. Conducting a "mini-trial" when the parties have reached a compromise would defeat the purpose of minimizing litigation expenses through settlement and be an unnecessary drain on judicial resources.

## C. Bankruptcy Court's Settlement Approval is Reasonable

The Debtors challenge the Bankruptcy Court's approval of the Revised Compromise under a review of the *Iridium* factors. Debtors argue that the Bankruptcy Court's approval of the Revised Compromise falls short of the "fair and equitable" standard, citing to a 9th Circuit case decided in 1986. Appellants' Brief, p. 21; *See In re A & C Properties,* 784 F.2d 1377, 1383 (9th Cir.1986), *cert. denied,* 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986) The "fair and equitable" standard, however, has not been followed by Courts in the Second Circuit. Rather, the standard in this Circuit is the multi-factor *Iridium* analysis recited *supra,* employed to determine, as to the Second Circuit said in *Grant,* 699 F.2d at 608, "whether the settlement falls below the lowest point in the range of reasonableness."

The Debtors also argue that the Bankruptcy Court's *Iridium* analysis is flawed, and the settlement falls below the lowest point of reasonableness, because 1) the bankruptcy court should have made a thorough determination on the merits of the Konover Lien, 2) determination of the Konover Lien would not involve complex and protracted litigation, and 3) the Revised Compromise is "at the possible expense of the HCN Debtor's unsecured creditors and Chapter 11 administrative creditors," while guaranteeing payments to Konover and Franklin in amounts that are undeserving on the merits. Appellants' Brief, p. 20–34.

■ This Court is unconvinced by the appellants' arguments and finds Judge Weil's approval of the settlement reasonable. Judge Weil canvassed the issues, apprised herself of the key facts, considered the relevant factors, and made an informed and independent determination. There is certainly no abuse of discretion. Indeed, this Court affirms the Bankruptcy Court's decision that the settlement did not fall below the lowest point in the range of reasonableness, for the reasons that follow.

### 1. Balance between Litigation's Possibility of Success and the Settlement's Future Benefits

The Court agrees with the Bankruptcy Court's assessment that the practical value of a victory against Konover is low, unless the Debtors and Trustee can prevail on the affirmative recovery claim, because the funds would be otherwise transferred to Franklin or another subsequent lien, as established in the record. Initial Decision, p. 48–49. The chance of recovery on the affirmative recovery claim against Konover, however, is low. This is evident by both the HCN Trustee's belief that the necessary elements of causation and damages in the affirmative claim would be difficult to establish and the Debtor's own abandonment of the issue at the hearing and in their post-trial briefs. Initial Decision, p. 57. If the plaintiffs have no confidence in their own claims and are not zealously pursuing these claims, it would be difficult for the Court to assign a high probability for their success in litigation.

Even if, contrary to these considerations, the Debtors should be regarded as likely to succeed on their claim against Konover, the future benefits of settlement is substantial. As Judge Weil noted, the

case has been pending over a decade since 2004 without substantial pay-outs[6] and with accruing administrative and litigation expenses constantly chipping away at the estate. In addition, "the HCN estate faces continuing diminution by the continuing accrual of postpetition interest on secured claims [and] the cash proceeds in both cases effectively are earning negative interest." Final Decision, p. 17 (internal quotations omitted). Prolonging the adversary process will increase the overall litigation costs, with a consequent decrease in the size of the fund. Since the costs of continued litigation are substantial and compounding, the benefit of settlement is immediate and apparent.

The Konover dispute has been a bottleneck that held up the resolution of both cases and the distribution of the funds. *Id.* The Revised Compromise would end years of rancorous and expensive litigation, and as Judge Weil noted would allow the Trustees "to take substantial steps toward getting money into the hands of creditors ... [making] progress toward case closing." *Id.* The effects of the Konover dispute extends far beyond Konover and the Trustees/Debtors. Many parties awaits the resolution of the Konover claim to collect on their claims against the estates: Andrews, Town of Newtown, Franklin, New Haven Mortgage Refinance, LLC, just to name a few. It is thus in the best interest of the greatest number of the parties to resolve the Konover's claim through settlement, so that funds can be distributed to the creditors, bringing finale to this decade-long litigation.

Each interested party is trying to maximize its own recovery. That is inherent in human nature. However, as usually occurs in the bankruptcy courts, there are insufficient funds to satisfy all claims. The Debtors are no exception. The settlement may dash the Debtors' hopes to receive any of the proceeds from the sale of the properties. But in any event those hopes are distant ones, because the towering Franklin claim would likely leave no remaining funds for other junior creditors and the Debtors. *See* n. 5, *supra.* As Attorney Boatman testified in the Hearing before this court, "[i]t's a long road to hoe" for the debtors to receive money from the estate even if they are successful in the Konover claim.[7] Appeals Hearing Transcript, Doc. 39, 34: 14–15. The certainty of numerous creditors receiving distribution from the estates promptly under the Revised Compromise far outweighs the diminutive possibility of the debtors receiving some money after many additional years of litigation, all while the funds of the estates are shrinking under administrative and legal costs and accruing negative interests. The benefit of the settlement is apparent: what is presently a larger pie, distributed to satisfied more interested parties.

### 2. Likelihood of Complex and Protracted Litigation

The second factor, likelihood of complex and protracted litigation, pertains to the

---

**6.** Except for partial payment of the secured claim of New Haven Mortgage Refinance, LLC ("NHMR") in the HCN case. Final Decision, p. 17.

**7.** Debtors noted in their brief that "[i]f the Debtors' Objections are sustained, and the amount of the Franklin claims gets reduced to something like $1,326,000, money paid out to Konover by the HCN Trustee, as proposed in the Revised Compromise, could instead be available to the HCN Debtor's unsecured creditors and its Chapter 11 administrative creditors." Appellants' Brief, p. 25. This presumes that not only will the Debtors win on the merits with regard to the Konover claim, but also reduce the Franklin payout, which is unclear to this Court how it can be achieved.

cost and length of litigation, which is inversely proportional to the benefit of settlement. Judge Weil's determination that proper adjudication of the Konover claim on the *Pomarico*[8] and consent[9] issues would require a full record developed in trial, thus denying summary judgment, is reasonable and within her discretion. There were certain factual questions, such as the involvement of Linda Silberstein in the businesses of THN Debtor and HCN Debtor, that would require further fact gathering and direct/cross examination on trial. *See* Final Decision, p. 18. Such genuine issues of material fact would preclude summary disposition. Unlike the larger question of whether the settlement is reasonable is appealable, the denial of summary judgment is traditionally considered interlocutory in nature, making it not appealable. *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 109 (2d Cir.2000); *In re Brendan Reilly Associates, Inc.*, 378 F.2d 30, 31 (2d Cir.1967).

This Court shares Judge Weil's concerns over implications of an overly broad or narrow interpretation of *Pomarico*, having adverse policy implications on Connecticut's construction and real estate industries. *See* Final Decision, p. 9. "Blanket lien" defined too narrowly may reduce the effectiveness of the Mechanic's Lien as a means for construction companies to collect on unpaid or under-paid projects. Meanwhile, defining it too broadly can be oppressive against land-owners and real estate developers. I do not regard whatever issues arise out of the *Pomarico* decision in the state court has casting doubt upon Bankruptcy Judge Weil's exercise of her discretion in the case at bar.

The Debtors challenge the Bankruptcy Court's denial of summary judgment on the substantive *Pomarico* and consent issues, arguing at the Hearing in front this Court (herein "the Appeals Hearing") that they should be subject to *de novo* review. Attorney Boatman testified:

**8.** The *Pomarico* issue, *see Pomarico v. Gary Construction, Inc.*, 5 Conn.App. 106, 497 A.2d 70 (1985), pertains to the question of whether work performed on one lot in a subdivision benefitting other lots in the subdivision can subject the lots receiving the benefit secondarily to a blanket Mechanic's Lien. Judge Weil made the following characterization in her Initial Decision at 60:
> In *Pomarico*, the contractor filed a blanket lien for work done at the insistence of the city which work was performed on one lot in the subdivision but arguably benefitted all lots in the subdivision.... Thus, *Pomarico* stands for the proposition that work performed only on one lot in a subdivided plot can be a proper subject for a blanket mechanic's lien on all lots in the subdivision when the work benefitted the entire subdivision. *Pomarico* also stands for the proposition that, at least under certain circumstances, benefit to all lots will be presumed when the work was undertaken pursuant to a governmental demand.

The Debtors argued that *Pomarico* does not support Konover's claim that "it possessed a Mechanic's Lien on the HCN Debtor's land for unpaid construction charges on the assist-

ed living building under separate ownership on a separate parcel." Appellants' Brief, p. 31. The merits of the *Pomarico* issue, however, is not at issue on this appeal.

**9.** The consent issue refers to whether the HCN Debtor consented to Konover performing work on the HCN property. "Lienors are protected if they have a claim either (1) by virtue of an agreement with or the consent of the owner of the land, or (2) by the consent of some person having authority from or rightfully acting for such owner in procuring labor or materials." *Seaman v. Climate Control Corp.*, 181 Conn. 592, 595, 436 A.2d 271 (1980) (citing Conn. Gen.Stat. § 49–33). Debtors argue that no such consent exists, while Attorney Sheldon, representing Konover, claims the work was done at the direction and consent of owners of both lots in his testimony in the Bankruptcy Court. Appellants' Brief, p. 30; Initial Decision, p. 37 (Transcript at 20:15–34:9 (testimony of Attorney Sheldon)). Again, because the merits of the Konover lien is not a question on appeal, this Court will refrain from making judgment.

The two issues that I regard are at least of the pack of issues subject to *de novo* review is the judge had hung her hat on, one, that in the record that had been developed, there was at least a possibility that the Konover lien could be deemed to be a blanket lien. . . . The second thing is: The judge decided . . . consent such . . . she concluded that if there was an opposition to the motion for summary judgment, and if there was something put before me that suggested consent, I would probably deny the motion for summary judgment. So, therefore, that's another good reason why the settlement ought to be approved.

Appeals Hearing Transcript, 24:19–25–25:1–13. This Court is not convinced: the Debtor's testimony mischaracterizes Judge Weil's decision, attempting to cloak questions of fact as questions of law. Judge Weil reasoned that there exist genuine issues of material fact which would require the development of a full record at trial, thereby making the litigation more "complex and protracted" and settlement more attractive. Such is a question of fact, not of law. Indeed, by determining that the present factual record is insufficient to decide the *Pomarico* and consent issues, Judge Weil has yet to make a judgment on the questions of law in this matter. Therefore, *de novo* review would not be appropriate.

### 3. *Paramount Interests of Creditors and Support of Other Parties of the Settlement*

All but the Debtors support the terms of the Revised Compromise. Final Decision, p. 19. With the exception of one creditor, Paragon, who objected to the Global Compromise, the creditors and the other parties have expressed no objection to the settlement. *Id.* at 18–19. The settlement would finally end a decade-long litigation, providing some payout to the various Creditors. As Judge Weil astutely observed, "[i]f the Revised Compromise is not approved, distributions will again be deferred (and possibly diminished)." *Id.* at 18.

The Debtors opposed Judge Weil's evaluation of this factor on the basis that these "guarantee[ ] payments made to Konover and Franklin, regardless of the merits of the claims" comes at the "*possible* expense of the HCN Debtor's unsecured creditors and Chapter 11 administrative creditors." Appellants' Brief, p. 34 (emphasis added). Attorney Boatman later explained "possible" in his testimony at the Appeals Hearing: "if the debtors are successful in [the adversary proceedings], there will be money available for the debtors in their view. It's a long road to hoe, but [he doesn't] think it's impossible." Appeals Hearing Transcript, 34: 12–15. This Court is wary of assigning a high value to a hypothetical payout to the Debtors that may or may not occur even if they prevail. This uncertainty falls short of the certainty of the payments to the Creditors. The interests of almost all Creditors and interested parties would be best served by adopting the Revised Settlement.

### 4. *Remaining Iridium Factors*

The three remaining *Iridium* factors—competency and experience of counsel, release by officers and directors, and arm's length bargaining—are undisputed. The Debtors agree with the Bankruptcy Court that the Trustees are competent attorneys and experienced at bankruptcy proceedings. Appellants' Brief, p. 34. Releases to be obtained by Officers and Directors are not at issue in the Revised Compromise. *Id.*

Lastly, the Bankruptcy Court determined that the agreement is the result of vigorous arm's length bargaining among the parties, based on the testimony of the

Trustees and counsel for Konover and the fact that the Revised Compromise is less favorable to Franklin than the Global Compromise. Final Decision, p. 19. The Debtors concur with the Bankruptcy Court's determination, except noting that the negotiations were done for the benefit of Konover, Franklin and the Chapter 7 administrative creditors only. Appellants' Brief, p. 34.

This Court finds the Bankruptcy Court's assessment of these three remaining *Iridium* factors to be reasonable.

### III. CONCLUSION

The Court is sympathetic to the position of the Debtors, who stand to lose their entire businesses in these bankruptcy proceedings, while understandably discomfited by the payment of $450,000 to the possibly undeserving Konover. However, this Court, sitting as an appeals court, must apply the standards of review established by governing authority. In this case, the Bankruptcy Court has made an informed and independent determination on the reasonableness of the settlement by canvassing the issues, apprising the key facts, and conducting a thorough and error-free *Iridium* analysis. This Court affirms the Bankruptcy Court's approval of the settlement and its determination that the agreement is within range of reasonableness. Judge Weil has not abused her discretion in approving the Revised Compromise.

The Debtors in this case had to surmount a high bar. So does any party in a bankruptcy case who believes, with conviction and articulated reasons, that a bankruptcy judge's approval of a settlement was unfair, unreasonable, and wrong. But the decisions of courts higher than this one make it plain that the standards of review and underlying legal principles strongly favor the judicial approval of settlements in bankruptcy, so long as the approval complies with relatively lenient criteria. That preference for settlement is informed by the public interest in bringing finality to protracted bankruptcy litigation, conserving the parties' and judicial resources, and limiting the ability of dissatisfied interests to obstruct an overall settlement that brings about a reasonable disposition of the entire case. On this appeal, the Debtors failed to show they are entitled to relief.

For the foregoing reasons, the Settlement Order entered by the Bankruptcy Court is AFFIRMED.

Appellants' [Doc. 10, 12] Motions to Stay Pending Appeal by appellants HCN and NP Debtors are DENIED as moot.

The Clerk of the Court is directed to close the file.

It is SO ORDERED.